CLARENCE L. HARELSON, Appellant, v. BENJAMIN F. TYLER et al.

Division One, March 2, 1920.

1. DEMURRER: Admissions. A general demurrer to a petition admits all facts well pleaded, but it does not admit allegations which are mere conclusions of the pleader.

2. ———: Refusal to Plead Further: Judgment: Appellate Practice. Where defendants interposed a general demurrer to the petition, which the court sustained, and, upon plaintiff's declining to plead further, entered judgment on the demurrer, the only question for consideration upon an appeal by plaintiff is the sufficiency of the petition, and if it states a cause of action, either under the statute or at common law, the judgment will be reversed, but otherwise it will be affirmed.

3. COMBINATION: Uniform Charges for Personal Services: Statute. An agreement by a voluntary association of men engaged in the same business whereby they bind themselves to charge uniform rates for personal services in buying and selling hay on commission is not within the prohibitions of the statutes against trusts and combinations in restraint of trade, for the reason that labor, whether physical or intellectual, is not by any fair rule of construction a "product or commodity" that is the subject of "importation, transportation, manufacture, purchase or sale" within the meaning of those words as used in the statute.

4. ———: ———: ———: **Competition: Restraint of Trade.** Notwithstanding the voluntary association was organized for the purpose of fixing, controlling and stabilizing the commission charges and brokerage fees of its members for buying and selling hay on a certain market, and minimizing competition in respect thereto, yet if nothing in the agreement directly or necessarily tends to a restraint of the trade, or is calculated to limit the quantity or to fix, regulate or control the price of the commodity or to lessen competition in the business of buying or selling it, the association is not a combination condemned by the statute.

5. ———: ———: **Inhibiting Dealings With Expelled Members.** A provision in the articles of association of a voluntary association, formed for the purpose of stabilizing the fees and commissions which its members may charge for buying and selling hay on a certain market, which debars them from trading with persons who have been suspended or expelled from membership for violating its rules, cannot, except incidentally and indirectly, affect the price which the producer receives for his commodity, and does not bring the association under the condemnation of the statute.

6. ———: **At Common Law: Civil Conspiracy: Definition.** A civil conspiracy is a combination of two or more persons to accomplish, by concerted action, an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. To sustain an action, damage must have resulted from the combination; to warrant an injunction, damage must be threatened.

7. ———: ———: ———: **Uniform Commissions: Oppression.** Agreements and conduct by a voluntary association of commission merchants which evidence merely a purpose to enforce and maintain fixed and uniform commissions and charges for buying and selling hay on a certain market do not amount to a civil conspiracy; but where the articles of association and by-laws provided that all contracts of a firm having a member of the association were subject to its rules, and plaintiff's partner was a member, and a month after the dissolution of the firm the partner was expelled for failure to pay a fine previously assessed, and the firm itself had not violated the rules or been penalized, the association could not, upon the pretext that plaintiff was expelled from membership privileges, bar him from all business intercourse with the members of the association, and thereby oppressively destroy his business of buying and selling hay in the market and in effect drive him from the market; such conduct, under the common law, amounts to a civil conspiracy.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

REVERSED AND REMANDED.

*L. C. Boyle, A. E. Watson,* and *Thomson, Dew & Brasher* for appellant.

The court below erred in sustaining the demurrer of defendants to the petition of the plaintiff.  Co-operative Livestock Commission Co. v. Browning, 260 Mo. 324; Walsh v. Association of Master Plumbers, 97 Mo. App. 280; Lowe's Patent Door Co. v. Fuelle, 215 Mo. 421.

*John T. Barker,* for respondents.

(1)  The court properly sustained defendant's demurrer.  The Kansas City Hay Dealers Association is legally organized and does not violate the Anti-Trust Laws of Missouri.  Commission Co. v. Browning, 260 Mo. 324; Gladish v. Stock Exchange, 113 Mo. App. 726; Anderson v. United States, 171 U. S. 604; State v. Duluth Bd. of Trade, 23 L. R. A. (N. S.) 1260; Bottlers Assn. v. Fennentry, 81 Mo. App. 533; Hunt v. Club, 140 Mich. 538; Fowle v. Park, 131 U. S. 88; Hopkins v. United States, 171 U. S. 578; Mathews v. Associated Press, 136 N. Y. 333; Comm. Co. v. Live St. Ex., 143 Ill. 210; Warren v. Tobacco Exch., 55 S. W. 912; Haepler v. N. Y. Ex., 149 N. Y. 414; Belton v. Hatch, 109 N. Y. 593; Comm. Co. v. Spencer, 215 Mo. 105; Whitwell v. Tobacco Co., 125 Fed. 454, 64 L. R. A. 689; Cincinnati Packet Co. v. Bay, 200 U. S. 179; Noyes on Intercorporate Relations (2 Ed), sec. 395; Stk. Yds. Co. v. Mallory, 157 Ill. 554; State v. Chamber of Commerce, 47 Wis. 670; Grain Ex. v. Bd. of Trade, 15 Fed. 847; Railroad v. Stk. Yds. Co., 45 N. J. Eq. 50. (2) Plaintiff's petition follows the petition in the case of Commission Co. v. Browning, 260 Mo. 324, and under the authority of that case must fail.  Gladish v. Stk. Ex., 113 Mo. App. 726; Anderson v. United States, 171 U. S. 604.  (3) Plaintiff's petition alleges a violation of the Anti-Trust Laws of Missouri.  He is now trying to re-

25—281 Mo.

cover under the common law. This he cannot do. Having based his action on the statutes, he cannot recover under the common law. Mathieson v. Railroad, 219 Mo. 542; Madden v. Railroad, 167 Mo. App. 143; Ham v. Railroad, 149 Mo. App. 200; Comm. Co. v. Browning, 260 Mo. 324.

RAGLAND, C.—This action was commenced in the Circuit Court for Jackson County, at Kansas City. The petition, omitting formal parts, is as follows:

"For his cause of action plaintiff states that the Kansas City Hay Dealers' Association of Kansas City, Missouri, is a voluntary association composed of certain persons engaged in the hay business in Kansas City, Missouri, and that the defendants, with others, are members and officers thereof; that said association is a powerful organization, and that the members thereof control the far greater amount of all the hay business transacted on the Kansas City market, which market is the largest hay market in the world; that said Kansas City Hay Dealers' Association is contrived and intended and designed to create, for and in behalf of the members thereof in that particular line of industry, a monopoly to restrain and stifle competition in the importation, transportation, manufacture, purchase and sale of hay on the Kansas City market and to regulate, control and fix the price of hay; to fix and maintain by agreement among its members, and rules passed by said association and by the use of arbitrary methods, the price to be paid as commission for handling hay on the Kansas City market; to hinder and prevent persons and corporations engaged in the hay business on the Kansas City market and to hinder and prevent this plaintiff in carrying on the business of buying, selling, receiving and shipping hay on this market.

"Plaintiff further says that said association has a constitution, by-laws and regulations, which constitution. by-laws and regulations are agreed upon by the members, reduced to writing and printed in a book or pamphlet entitled 'Constitution, By-Laws and Regulations of the Kansas City Hay Dealers' Association of Kansas

City, Missouri,' which constitution, by-laws and regulations constitute a contract among the members of said association, which said contract is unlawful, illegal and violative of the statutes of Missouri relating to pools, trusts, conspiracies, discriminations, and boycotts, as hereinafter set forth; that said association employs men for the purpose of plugging, weighing and watching cars of hay arriving in Kansas City for sale on the Kansas City market; that each of the members of said association are assessed certain fees monthly for the payment of the men employed as pluggers, watchmen and weighers; that it is the rule and custom of such association to render bills for such dues and fees to its members each month; that Section 16 of Article 6 of the above mentioned constitution, by-laws and regulations provides as follows, to-wit:

" 'Sec. 16. Whenever assessments are made on bills rendered for indebtedness to this association, they shall be considered due and shall be delinquent after thirty days from date, and the said act of delinquency automatically suspends the member for neglecting or refusing to pay the same from all the privileges of this association until paid. Failure to pay any assessment or indebtedness to this association for a term of one year from the date of said assessment or bill, shall of itself operate as a forfeiture and cancellation of the membership of such member and of all property and other rights and privileges thereunder. Suspended members are not relieved of the payment of any assessment or bill and the payment of any assessment or bill by members while under suspension shall not be construed as in any way affecting such suspension.'

"Plaintiff further says that Sections 4, 5, 6, (a), (b), (c), (d), Section 7, and Section 8, which said sections constitute an unlawful agreement to regulate, control and fix the price and tend to regulate, control and fix the price of hay, are as follows, to-wit:

" 'Sec. 4. The commission for selling incoming hay of any description shall be seventy-five cents per

ton, with no minimum charge. The commission for selling incoming wheat or oats straw shall be fifty cents per ton, with a minimum charge of five dollars on any car containing twenty thousand pounds or less.

"'Sec. 5. The commission for buying and shipping outgoing hay of any description shall be seventy-five cents per ton, with no minimum charge. The commission for buying and shipping outgoing wheat or oats straw shall be fifty cents per ton, with a minimum charge of five dollars for any car containing twenty thousand pounds or less.

"'Sec. 6. (2) A. broker is defined as a member who sells inbound hay or straw on the Kansas City market for another member actively engaged in the hay business in Kansas City, or a member who buys hay or straw on the Kansas City market for any individual, firm or corporation, where the names of the principals are announced on making the contract, and the broker at no stage of the transaction becomes the actual owner of the property, or a member looking after hay or straw shipped to the Kansas City market for sale or inspection and afterwards it is reconsigned to other destination.

"'(b) A brokerage of one dollar per car may be charged where members sell another member's incoming hay or straw on the Kansas City market, giving up the names of the principals at the time of trade, provided that members are prohibited from acting as brokers for selling inbound hay or straw for non-resident members or non-members.

"'(c) A brokerage of one dollar per car shall be charged for buying hay or straw on the Kansas City market where the member gives up the names of the principals at the time of the trade, and the principals furnish substantial proof that all bills will be paid according to contract.

"'(d) A brokerage of one dollar per car shall be charged for receiving hay for the purpose of having the same inspected at Kansas City and reconsigning it to other markets. The shipper paying the inspection, watchman, plugging and reconsigning charges.

Harelson v. Tyler.

" 'Sec. 7. Every member of this association, and every person, firm or corporation admitted to trade or to do business therein who shall charge less than the regular rates of commission or brokerage established by the rules of this association, or shall assume or rebate any portion of the same, or shall, with intent to evade in any way, directly or indirectly, the regular rates of commission or brokerage established by the rules of this association, purchase, or offer them, or it, for sale; or shall, with intent to cut or evade in any way, directly or indirectly, the regular rates of commission and brokerage established by the rules of this association; or shall make or report any false or fictitious sales or purchases; or shall resort to any method of accounting, directly or indirectly, in violation of or contrary in purpose and effect to a strict adherence to the regular established rates of commission and brokerage of this association; directly or indirectly buy or give, or offer so to do, any money or other consideration of whatsoever nature to any person to procure or influence shipments or consignments of hay or straw in any form, or shall, with intent to cut or evade in any way, directly or indirectly, the regular rates of commission and brokerage established by the rules of this association, make use of any shift or device whatsoever, shall be deemed guilty of violating the rules of this association establishing rates of commission and brokerage, and on conviction thereof shall be fined by the association in the sum of one hundred dollars, fifty dollars of which shall be paid to the person furnishing the evidence upon which the conviction is had. This rule shall not prevent the regular employment by members of this association of traveling men, but shall prohibit a division of commission with such traveling men who are not members of this association.

" 'Sec. 8. All contracts of a member of this association, or a firm having a member of this association as a general partner, or a corporation having a membership representation with any other member of this association as a general partner, or any other corporation

having membership representation for the purchase and sale of hay or straw, or transactions incident to the hay and straw business proper, are contracts subject to the rules of this association.'

"Plaintiff further says that on and prior to the 21st day of October, 1916, he was a copartner with one H. S. Nicoll, engaged in the hay business in Kansas City, Missouri, under the name of the Southwestern Hay & Grain Company; that the said H. S. Nicoll was a member of the said association; that on the 21st day of October, 1916, this plaintiff and the said H. S. Nicoll dissolved said partnership; that thereafter, namely, on the 1st day of November, 1916, the said H. S. Nicoll was automatically suspended from said association under Section 16 of Article 6 of said constitution, by-laws, and regulations for the nonpayment of the sum of $40.85 due said association for weighing, watchmen and Plugging fees for the month of September, 1916.

"Plaintiff further says that said association did on the 14th day of September, 1915, pass an amendment to the constitution, by-laws, rules and regulations, of said association, which thereby became a contract between the members thereof and which is as follows:

" 'Sec. 36. Every member of this association and every individual, firm or corporation admitted to trade or do business therein, who shall have any business dealings, or relations pertaining to the purchasing or selling of hay or straw at Kansas City with any individual, firm or corporation who is under suspension from membership, or who has been expelled therefrom because of a violation of any of the provisions of the constitution, by-laws, rules and regulations of the association, after notice of such suspension, or expulsion, shall have been issued by the secretary, shall be fined ten dollars for each and every car, or part thereof, so purchased or sold.'

"That said by-law constitutes an unlawful, illegal and wrongful contract between the defendants and the members of said association; that the officers and members of such association did, on and after the 1st day of November, 1916, wrongfully, illegally and unlawfully,

with intent to hinder and prevent plaintiff from transacting business on the hay market at Kansas City, Missouri, maintain that said plaintiff was suspended from membership in said association by reason of his former association with said Nicoll, and that under and by virtue of the above-quoted amendment, Section 36, no other member of the association could deal or trade with him, the said plaintiff; that the said plaintiff was desirous of continuing in the business of buying, selling, receiving and shipping hay in Kansas City, Missouri, which was his calling, occupation and business, and the only one in which he was experienced, and many of the members of said association were anxious to deal with him in such business, but such members were afraid to do so for fear of the fine provided in the last above-named section; that one member of the association did deal with plaintiff and after November 1, 1916, was fined therefor in the sum of $640 by the said association; that another member of said association was fined ten dollars by said association for a similar alleged offense, and that the officers of said association made threats to fine other members of said association who had or were about to deal or transact business with the plaintiff in his said business, calling or avocation; that said members, by reason of said constitution, by-laws and regulations and agreements, and by reason of said threats, were intimidated and prevented from having any business dealings with the said C. L. Harelson.

"Plaintiff further says that he was, during the months of November and December, 1916, engaged in reorganizing his said business with a view of continuing in and carrying on the hay business in Kansas City, Missouri; that his list of customers and his acquaintance among the hay and grain trade in the territory adjacent, tributary to and including Kansas City, Missouri, was of great value and as a basis for the prosecution of the hay business in said territory, together with his long experience in said business, was worth at least twenty-five thousand dollars; that in said business he had in the past transacted large amounts of business,

sometimes being as great as five hundred cars of hay or straw in a month and making an aggregate yearly amount of two hundred and fifty to three hundred thousand dollars; that on three different occasions the defendants unlawfully confederating and conspiring together to injure and destroy the said business of the plaintiff and to prevent plaintiff from carrying out his plan of reorganization and the prosecution of his said business and enjoying the profits thereof, informed persons with whom plaintiff was negotiating for a reorganization of this business that the members of the association at Kansas City, Missouri, would not be allowed to trade with the said plaintiff or with any firm or corporation with which the plaintiff might be associated; that each of the three persons above referred to were ready, willing and able to furnish sufficient money to enable the plaintiff to reorganize and to continue to carry on his said business and to use his experience therein and his knowledge and acquaintance with customers and dealers therein; that by reason thereof said persons were intimidated and were afraid to invest their funds in the business which plaintiff was attempting to reorganize, and by reason thereof plaintiff was prevented from securing capital to continue and carry on said business and to use his experience, knowledge and acquaintance with customers and dealers aforesaid, by reason of said malicious threats and statements, and his business aforesaid was thereby largely injured and destroyed; that after the failure of the plaintiff's efforts to interest capital in his business, by reason of the malicious threats and statements aforesaid made by the said association members as aforesaid, plaintiff was employed by the Shofstall Hay & Grain Company, a corporation, at a salary of two hundred dollars per month and commissions; that shortly thereafter said association and its members, with a view to prevent the said plaintiff from working for said Shofstall Hay & Grain Company, on January 2, 1917, substituted for the abovementioned Section 36 of Article 12 of the Constitution,

By-Laws, Rules and Regulations, the following, to be known as Section 36:

" 'Every member of this association and every individual, firm or corporation admitted to. trade or do business therein, who shall, directly or indirectly, have any business dealings or relations pertaining to the handling of hay or straw, or shall make use of any shift, device or subterfuge, whatsoever, to nullify the intent of this rule, with any individual, firm or corporation who is under suspension from membership or who has been expelled therefrom because of a violation of any of the provisions of the constitution, by-laws, rules and regulations of the association, after notice of such suspension, or expulsion, shall have been issued by the secretary, shall, upon conviction thereof be fined by the association not less than the sum of five hundred dollars, nor more than one thousand dollars, or suspended, expelled or both, and fifty dollars shall be paid by the association to the person furnishing the evidence upon which the conviction is based.'

"That prior to the passage of said substitute Section 36, the officers of the said defendant association notified the said Shofstall Hay & Grain Company that it must cease to employ the said plaintiff, and fined C. E. Shofstall, who holds a membership in said defendant corporation and is an officer of the said Shofstall Hay & Grain Company, the sum of $650 for having the said plaintiff in the employ of the said Shofstall Hay & Grain Company, and in consequence thereof said plaintiff was discharged from the employ of the said Shofstall Hay & Grain Company; that under and by virtue of the rules, regulations and agreements between the members of said defendant Hay Dealers' Association as aforesaid, said plaintiff is unlawfully and illegally prevented from earning a living in his business, avocation and calling of the hay business at Kansas City, Missouri, and its adjacent business territory; that he has been in the hay business for a lifetime and is unacquainted with any other calling or avocation from which he can derive a livelihood; that he cannot go into the hay business at

any other point in the United States and ship hay to the Kansas City market or territory; that by the illegal and unlawful acts aforesaid of the defendants, he is prevented from earning a living and his calling and occupation has been greatly injured, to the plaintiff's damage in the sum, of twenty-five thousand dollars; that the defendants threaten and do continue to interfere with the business, occupation and calling of plaintiff in the manner aforesaid, and if the defendants are permitted to continue their illegal acts as aforesaid against the plaintiff's business, occupation and calling aforesaid, the same will be wholly and irretrievably destroyed and the plaintiff will thereby suffer irreparable injury and damage, and for the prevention thereof he has no adequate remedy at law and the defendants should be enjoined from further interfering with the plaintiff, his business, occupation and calling or in anywise boycotting the same.

"Wherefore plaintiff prays judgment against the defendants and each of them for treble damages, to-wit, the sum of seventy-five thousand dollars, and costs, and that a temporary injunction may be granted the plaintiff restraining and enjoining the said defendants and each of them and their successors in office, individually and as members of said Kansas City Hay Dealers' Association of Kansas City, Missouri, and as business agents of said association, their confederates, associates, agents and representatives from boycotting or making effectual, promulgating, or in anywise proclaiming any boycott upon or against the plaintiff or his business, occupation or calling, or from sending, conveying or delivering in any way to any person, firm, corporation or association any boycott notice, verbal or otherwise, upon or against the plaintiff, and from any way menacing, hindering or obstructing the plaintiff or interfering with his patronage, business or customers, and from in any way impeding the plaintiff from the fullest enjoyment of all the patronage, business and custom which he may possess, enjoy or acquire, and from interfering with the plaintiff or his business by threats to any person who

might be or become a customer or business associate of plaintiff; that said defendants or any of them will cause or prevent any person or persons whomsoever to cease business relations with any customer or business associate of plaintiff, and that at the final hearing hereof said injunction be made perpetual, and for such other and further relief as to the court may seem just, proper and equitable.''

To this petition defendants interposed a general demurrer, which the court sustained. Plaintiff declining to plead further, judgment was rendered on the demurrer. From that judgment plaintiff prosecutes this appeal.

The demurrer admits all well pleaded facts. They may be summarized as follows: The defendants are officers and members of the Kansas City Hay Dealers'

**Admissions.** Association, a voluntary association, which controls the greater amount of the hay business on the Kansas City market, the largest hay market in the world. The Association was organized, in part, for the purpose of fixing and maintaining by agreement among its members the amounts to be paid as commissions and brokerage for buying, selling and handling hay on the Kansas City market. In furtherance of that object it adopted a constitution and by-laws and, among others, those hereinafter named. By Sections 4, 5, and 6 (a), (b), (c) and (d) thereof, it fixed the commissions and brokerage to be charged by its members for certain services therein enumerated and defined. By Sections 7 and 8 thereof, it provided that, if any of its members, or any person, firm or corporation, entitled to membership privileges by reason of having associated with it or them a member, charged less than the rates fixed by its rules, such member or associated member would be subject to a fine. By Section 16 thereof, if certain assessments were not paid by members within prescribed times, suspension and expulsion would automatically ensue. Section 36 thereof forbade any member, or person, firm or corporation having membership privileges, from having any business dealing, pertaining

to the buying or selling of hay or straw at Kansas City.
with any individual, firm or corporation under suspension, or who had been expelled from the Association.
On October 21, 1916, and prior thereto, plaintiff was, and
had been, a partner with one Nicoll, engaged in the hay
business at Kansas City, under the firm name of Southwestern Hay & Grain Company. On the date last named
plaintiff and Nicoll dissolved their partnership. During
the continuance of the partnership Nicoll was a member
of the Association, but on the first of November following its dissolution he was suspended for failure to pay
assessments that became due October first preceding.
After Nicoll's suspension, defendants maintained that
plaintiff, on account of his former association with
Nicoll, was also suspended and that no member of the
Association could deal or trade with him. Thereafter,
on account of fines inflicted and threatened to be inflicted by defendants on members of the Association,
plaintiff was prevented from having any dealings with
them in any matter pertaining to the hay business. "On
three different occasions the defendants unlawfully confederating and conspiring together to injure and destroy the said business of plaintiff and to prevent plaintiff from carrying out his plan of reorganization and
the prosecution of his said business and enjoying the
profits thereof, informed persons with whom plaintiff
was negotiating for a reoganization of this business that
the members of the Association would not be allowed to
trade with plaintiff or with any firm or corporation
with which he might be associated." On each of these
occasions, when plaintiff was about to successfully
mature a plan by which he would have secured the influence and financial support of men of large capital in
forming a business organization to deal in hay on the
Kansas City market, he was thwarted by defendants
in the manner stated. Finally, after these failures
brought about by defendants, plaintiff secured employment with a hay-and-grain corporation to work on a
salary and commission. An officer of the corporation
was a member of the Association; defendants caused

him to be fined on account of plaintiff's employment, and plaintiff was thereupon discharged. By reason of the aforesaid acts of the defendants, plaintiff's business, which was of the value of $25,000, was destroyed and plaintiff was deprived of his avocation. Defendants threaten to continue such interference with plaintiff's business and calling.

The allegations to the effect, that the Association was designed and intended to create a monopoly to restrain and stifle competition in the importation, transportation, manufacture, purchase and sale of hay, and to regulate, control and fix the price thereof; that it was further designed to prevent plaintiff and others from engaging in the hay business on the Kansas City market; and that the constitution and by-laws of the Association constitute a contract among its members that is violative of the statutes of this State relating to pools, trusts, conspiracies, discrimination and boycotts, being merely conclusions of the pleader, are not admitted by the demurrer. Their soundness depends on the specific facts pleaded.

I. There was no theory of the case developed by a trial below. The only question passed on was the sufficiency of the petition, tested by general demurrer. In reviewing that ruling, it is incumbent upon us to apply

**Practice.** the same principles that were controlling in the court *nisi.* If the petition states a cause of action, either under the statute or at common law, the demurrer was improvidently ruled; otherwise the judgment should be affirmed. [Railroad v. Freeman, 61 Mo. 80; Comings v. Railroad, 48 Mo. 512; Filler v. Brewing Co., 223 Fed. 313.]

II. Defendants are members of a voluntary association, and as such the petition predicates statutory liability against them because the constitution, by-laws and regulations of that association constitute, as it is alleged, an understanding or agreement

**Combination:** of its members that amounts to a conspir-
**Charges for**
**Personal Service.** acy in restraint of trade as defined by some or all of Sections 10298 to 10301,

inclusive, Revised Statutes 1909. Looking to the laws of the Association as pleaded, we find that the principal subject with which they deal, and to which all else is incidental, is that of fixing and maintaining rates of commission and brokerage to be charged by its members. So far as they disclose, the only purpose of the organization was to fix and stabilize among its members remunerative rates of compensation for their services in buying, selling and receiving and reconsigning shipments of hay and straw. Is the agreement so evidenced by the by-laws, and the combination effected thereby, within the prohibitions of the statute? We think not, for at least the following reasons: (1) The contract in question is one whereby men engaged in the same business have bound themselves to charge uniform rates for personal services, merely that and nothing more. The combination thus formed is not under the ban of the statute, for the reason, that labor, whether physical, or intellectual, or a combination of the two, is not by any fair rule of construction a "product or commodity" that is the subject of "importation, transportation, manufacture, purchase or sale" within the meaning of the words as used in the statute. [State ex rel. v. Associated Press, 159 Mo. 410; Door Co. v. Fuelle, 215 Mo. 421.] (2) While the association of which defendants are members was unquestionably organized for the purpose of fixing and controlling the rates of commissions and brokerage for the buying and selling of hay on the Kansas City market and minimizing competition in respect thereto, nothing in its by-laws or regulations directly and necessarily tends to a restraint of the trade. Nothing therein is calculated to limit the quantity or to fix, regulate or control the price, nor to lessen competition in the business of buying and selling hay and straw. There seem to be no restraints imposed with respect to the dealings of members with non-members, at least none are specifically alleged. The only inhibition of the kind that distinctly appears is the one that debars members from trading with persons who have been suspended or ex-

pelled from membership in the association for a viola-
tion of its rules.  It may be said, however, that, as the
commission and brokerage specified in the rules of the
association are fixed charges which must be paid, the
price which the producer receives for his hay may be
indirectly affected thereby.  But the question is whether
the production or price is directly, or to any appreciable
extent, controlled or regulated by a rule which makes the
charges uniform instead of variable, definite and known
instead of uncertain and unknown.  It is probable that
certainty and uniformity of the charges of the selling
agent, like those of the carrier and warehouseman, would
tend to encourage production and foster trade rather
than the reverse, but whether it would be the one way or
the other, the effect would be remote or incidental, and
consequently the association, which was formed for the
direct purpose of protecting and promoting the interests
of its members, would not thereby be brought within
the condemnation of the statute. [Door Co. v. Fuelle,
supra, 1. c. 474; Hopkins v. United States, 171 U. S. 593;
States v. Duluth Bd. of Trade, 107 Minn. 506.]

III.  Whether the petition states a cause of action
at common law is next to be considered.  It is apparent
that the business of buying and selling hay and straw
on the Kansas City market is done to so great an extent
Civil Conspiracy.   by the members of the Hay Dealers' As-
sociation, that one who is not a member
would be under a great disadvantage in engaging in, or
continuing in, such business, if not entirely prevented
therefrom, if the members of the association declined to
have any dealings with him.  The question, therefore,
is whether the action and conduct of defendants in ex-
cluding plaintiff from all business relations with mem-
bers of the association and virtually thereby making a
trade outlaw of him amounted to a conspiracy.  A
"civil conspiracy" is said to be a combination of two
or more persons to accomplish, by concerted action, an
unlawful or oppressive object; or a lawful object by
unlawful or oppressive means.  To sustain an action,

damage must have resulted from the combination; to
warrant an injunction, damage must be threatened. [National Fireproofing Co. v. Builders' Assn., 169 Fed. 259;
State ex rel. v. Associated Press, supra; Walsh v. Association, 97 Mo. App. 280.] The principle which determines whether the object sought to be effected by two
or more persons acting in concert is legal or illegal can
not be stated more clearly than was done by the court
in National Fireproofing Co. v. Builders' Assn., supra, at
page 265: "The direct object or purpose of a combination furnishes the primary test of its legality. It is not
every injury inflicted upon third persons in its operation that renders a combination unlawful. It is not
enough to establish illegality in an agreement between
certain persons, to show that it works harm to others.
An agreement entered into for the primary purpose of
promoting the interest of the parties is not rendered illegal by the fact that it may incidentally injure third
persons. Conversely, an agreement entered into for the
primary purpose of injuring another is not rendered legal
by the fact that it may incidentally benefit the parties.
As a general rule it may be stated that, when the chief
object of a combination is to injure or oppress third persons, it is a conspiracy; but that, when such injury or
oppression is merely incidental to the carrying out of a
lawful purpose, it is not a conspiracy. Stated in another
way: A combination entered into for the real malicious
purpose of injuring a third person in his business or
property may amount to a conspiracy and furnish a
ground of action for the damages sustained, or call for
an injunction, even though formed for the ostensible
purpose of benefiting its members and actually operating to some extent to their advantage; but a combination without such ulterior oppressive object, entered into
merely for the purpose of promoting by lawful means
the common interests of its members, is not a conspiracy." Applied to the Kansas City Hay Dealers' Association, this test quite conclusively shows that the object it seeks to effect, as disclosed by its by-laws, is lawful. These rules make it obligatory upon the members,

and the business organizations with which they associate themselves for the purpose of buying and selling hay, to charge fixed rates of commission; they provide for the infliction of fines upon the members and their respective business organizations for a violation of such rates; they require the payment by members, under penalty of suspension or expulsion, of certain assessments for the support of the Association; and they forbid members from dealing with those who have been suspended or expelled from membership. All of which merely evidences a purpose to enforce and maintain fixed and uniform rates of commission to be charged by its members.

It is not easy, however, to bring within the scope of this purpose, and the means provided by the by-laws for its accomplishment, the actions of the defendants in their pursuit of the plaintiff. It does not appear that he was, or ever had been, a member of the Association. He had been a partner with one Nicoll, a member, in the Southwestern Hay & Grain Company. But that did not make plaintiff a member, *per se*, and subject to discipline by the Association. Section 8 of the by-laws provides that "all contracts . . . of a firm having a member of this association as a general partner . . . for the purchase and sale of hay . . . are contracts subject to the rules of this association." Section 7 provides that if such a firm violates the rule as to rates it shall be fined. So that, while plaintiff was a partner of Nicoll, the contracts of the firm were subject to the rules of the Association with reference to rates of commission, and the firm itself subject to a fine if it charged less than the rates fixed by them. To this extent, and to this extent only, did plaintiff ever assume any obligation to the Association by reason of his partnership with Nicoll. Now it does not appear that the Southwestern Hay & Grain Company ever violated the rules respecting rates, but after the dissolution of that firm Nicoll was suspended from membership in the association for the non-payment of assessments. These assessments had become due before the dissolution of the partnership, but they

had been assessed against the member and not the firm, and it does not appear that plaintiff, either individually or as a former partner of Nicoll, was under any obligation to pay them. The by-law itself does not purport to penalize any one but the defaulting member. How then could plaintiff come within its condemnation? Yet, it is on the pretext that plaintiff was suspended from membership privileges, that defendants have debarred him from all business intercourse with members of the association. From the facts alleged, the inference is plain that the defendants went entirely beyond the scope of the true objects and purposes of the association, and the means that it employs for their accomplishment; and, under the pretext and color of its rules, for their own unlawful purpose of oppressing plaintiff, deprived him of all business relations with members of the association. It may be that there are other facts not disclosed by the petition that would throw an altogether different light on the conduct of defendants, but those stated, nothing further appearing, call for justification. By their concerted action, defendants destroyed plaintiff's business, and it devolves upon them to show, if they can, that the injury thus inflicted by them was merely the result of a lawful effort on their part to promote their own welfare. We are of the opinion, therefore, that the petition states a cause of action at common law.

What has been said with reference to plaintiff being a non-member of the Association should not be construed as implying that a member, after suspension or expulsion, can for all time be treated as an Ishmaelite by the other members, regardless of all other circumstances, and their conduct in so doing not amount to a conspiracy. All that we hold in this respect is that the by-laws as pleaded, if enforced in good faith solely to accomplish the primary purpose of the Association to fix and maintain for its membership uniform rates of commission and brokerage, are a lawful means for the accomplishment of such object.

The judgment is reversed and the cause remanded to be proceeded with in conformity with the views herein expressed. *Brown* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAG-LAND, C., is adopted as the opinion of the court. *Blair, P. J.,* and *Graves* and *Goode, JJ.,* concur; *Woodson, J.,* not sitting.