David Shaltupsky, Appellant, v. Brown Shoe Company, a Corporation, First National Bank of Cape Girardeau, Missouri, a Corporation, and Clyde D. Harris, an Individual, Respondents. —No. 38290.—168 S. W. (2d) 1083.

Division One, March 2, 1943.

Dubinsky & Duggan for appellant.

Nagel, Kirby, Orrick & Shepley, Rush H. Limbaugh and Benson C. Hardesty for respondents.

832

GANTT, J.—Action by plaintiff on the theory that defendants entered into a conspiracy to injure his business as a shoe merchant in Cape Girardeau, Mo. ·The trial court sustained the demurrers of defendants to three different petitions on the ground that said petitions failed to state facts sufficient to constitute a cause of action. On the court sustaining the demurrers to the third petition and entering judgment for defendants, plaintiff appealed.

"Civil conspiracy" is generally defined to be an agreement to do an unlawful act or a lawful act in an unlawful manner. [Jackson v. Scott County Milling Co., 118 S. W. (2d) 1054, 1056; 15 C. J. S., p. 1001; 12 C. J., p. 583; 11 Am. Jur., p. 578; Harelson v. Tyler, 281 Mo. 383, 219 S. W. 908, 913; 8 Words & Phrases, Permanent Edition, p. 754.]

The material part of the third (second amended) petition follows:

"Plaintiff further states for a great number of years he was and is engaged in a retail shoe business in the City of Cape Girardeau, State of Missouri; that for many years prior to July 1, 1940, he transacted business with the Brown Shoe Company and held their exclusive license for certain retail merchandise manufactured by them under the defendant's exclusive trademark and trade-name.

"Plaintiff further states that during the said years, from approximately 1930 to 1940, he enjoyed friendly and amicable relations with defendant, Brown Shoe Company, and was extended a line of credit that was commensurate with plaintiff's particular type of business.

"Plaintiff states that on or about November 1, 1939, all of the defendants conspired with one another and against this plaintiff, and for the purpose of depriving this plaintiff of business and more particularly the exclusive trade-marks and brands of the defendant, Brown Shoe Company.

"Plaintiff further states that said conspiracy between all of the defendants took place between November 1, 1939, and on or about August 1, 1940, and that on or about August 1, 1940, as a result of the conspiracy aforesaid by all of the defendants, the plaintiff was deprived of the right to sell the defendant's exclusive brands and trade-marked shoes.

"Plaintiff further states that during the time herein mentioned, the defendants, Harris, as President of the defendant bank, advised the defendant, Brown Shoe Company, to cease and desist from transacting business with the plaintiff, and said advice was acted upon by the defendant, Brown Shoe Company, and the business relationship existing by and between the defendant, Brown Shoe Company, and plaintiff, for some 15 years was terminated, all to the damage of plaintiff.

"Plaintiff further states that the advice given by the defendants Harris and the bank, and followed and indulged in by the defendant, Brown Shoe Company, was capricious and arose from and out of plaintiff's refusal to follow certain civic instructions delivered to plaintiff by the defendants Harris and the bank, and upon plaintiff's refusal to obey said instructions, ▮▮▮▮ plaintiff was threatened with the cancellation of his right and privilege of selling the products and highly publicized trade brands of the defendant Brown Shoe Company, and the defendant, Brown Shoe Company, did execute, fulfill and carry out the threats of cancellation theretofore made by the defendants, Harris and the bank, by refusing to further sell any of its products to plaintiff.

"Plaintiff further states the conspiracy of the defendants further contemplated that the defendants, Harris and the bank, were to cancel and terminate, and did cancel and terminate the banking relations existing over a long period of time by and between plaintiff and the defendant Harris, and the defendant bank that Harris was president of, and that the termination of banking relationship heretofore mentioned was to be and was seized as an alibi, excuse and reason for an immediate suit without notice by the defendant, Brown Shoe Company, upon their account of $358.81, owed by plaintiff to defendant, Brown Shoe Company, notwithstanding the fact that at various times the plaintiff owed defendant, Brown Shoe Company, thousands of dollars during the years of business relationship existing between plaintiff and defendant, Brown Shoe Company.

"Plaintiff further states the defendants knew that as a result of said suit being filed as conspired and agreed to by the defendants, that plaintiff's credit would be jeopardized and cut off, and that as a

result of plaintiff's credit being cut off, plaintiff would be unable to continue in business, except under the most hazardous of conditions, if plaintiff could continue in business at all.

"Plaintiff further states that the said conspiracy so entered into by the defendants to terminate the hitherto friendly relations between plaintiff and defendant, Brown Shoe Company, was contrary to and in violation of the usual and customary reasons and grounds terminating business relations of long standing, and that said termination of the business relations between plaintiff and defendant Brown Shoe Company was done with the sole thought in mind to crush and ruin plaintiff in the business he had engaged in for many years; which thought, to crush and ruin plaintiff's business, had actuated the conduct of the defendant, Harris and First National Bank, for many years past and said conspiracy found fruition, and was culminated when defendant, Brown Shoe Company, agreed to and became part of said conspiracy to ruin and wreck plaintiff's business.

"Plaintiff further states that said conspiracy of the defendants was illegal, unjust, discriminatory and arbitrary, all to plaintiff's damage.

"Plaintiff further states as a result of the conspiracy of these defendants, his business was virtually ruined and his good-will was destroyed, and he has been handicapped and harassed ever since in his endeavor to continue his business of many years standing; and that said business so ruined by the defendants was of the value of $20,000.00.

"Plaintiff further states that the conduct of the defendants was malicious and premeditated.

"Wherefore, plaintiff prays judgment against the defendants in the sum of $20,000.00 actual damages, and $30,000.00 punitive damages, and for costs."

It will be noted that the plaintiff, after alleging a conspiracy, proceeds to state the facts relied upon, as establishing the conspiracy. In substance he alleges that for many years the bank and its president were unfriendly to him; that they threatened him with a termination of his business relations with the shoe company; that thereafter they advised the shoe company to discontinue the sale of shoes to plaintiff; that, acting upon said advice, the shoe company refused to sell shoes to plaintiff; that about said time the bank refused to continue business with the plaintiff; that the shoe company then sued the plaintiff on account; that said conduct of the defendants was malicious and caused injury to plaintiff's business, as alleged in the petition.

It is neither alleged in the petition nor contended that the shoe company was under contract to sell shoes to the plaintiff. Likewise, it is neither alleged in the petition nor contended that the bank was under contract to engage in a banking business with the plaintiff.

Furthermore, it is neither alleged in the petition nor contended that the defendants, by concerted action or otherwise, sought to interfere with plaintiff's right to purchase shoes from other manufacturers or to interfere with plaintiff's right to transact a banking business with other banks. Even ▮▮▮ so, plaintiff argues that the facts alleged in the petition are sufficient to make a case for the jury on the question of whether or not the defendants unlawfully conspired to injure plaintiff's business. We do not think so.

The bank and the shoe company were each free to discontinue relationship with plaintiff without being subject to an action for damages. "This being true, it follows that what one may do the many may do, if the combined act *works no invasion of the complainant's rights*. . . . The gist of the action consists, not in the conspiracy, but in the damage inflicted in pursuance thereof." Epps v. Duckett, 284 Mo. 132, 223 S. W. 572, 575.

In 15 C. J. S., p. 1002, Sec. 8, it is said: "There can be no independent tort for conspiracy unless in a situation where mere force of numbers acting in unison or other exceptional circumstances may make a wrong, and to prove a tort on the basis of mere force of numbers it must be shown that there was some peculiar power of coercion possessed by the combination which an individual standing in a similar relation to plaintiff would not have had. However, an organized body of men working together can produce results very different from those which can be produced by an individual without assistance, because of a greater power of coercion on the part of the combination, and may make oppressive and dangerous that which, if it proceeded from a single person, would be otherwise. The result of this greater power of coercion is that what is lawful for an individual is not the test of what is lawful for a combination of individuals."

However, no facts are stated in the petition to show how the withdrawal of one bank and one shoe company from doing business with plaintiff (even if it were in pursuance of an agreement between them to the effect that each would do what each had the lawful right to do individually and regardless of purpose as motive therefor) could work an invasion of plaintiff's rights, and by force of numbers exert a peculiar power of coercion or oppression different in kind from anything that could have been accomplished as single individuals. The alleged conspiracy charge was at most merely that the bank and shoe company each would do what each could do separately and what each, acting alone, could do without regard to motive or purpose in so doing. In so acting in concert it is not contended that the conduct of the Bank and Shoe Company would be within the statutes prohibiting restraints of trade (Secs. 8301-8317, R. S. 1939), where concerted action by those *similarly engaged* to destroy the business of another or inflict injury on the public is prohibited. See, Dietrich v.

Cape Brewery & Ice Co., 315 Mo. 507, 286 S. W. 38, 43; Reisenbichler v. Marquette Cement Co., 341 Mo. 744, 108 S. W. (2d) 343, 345.

The petition states no facts tending to show a peculiar power of coercion possessed by the defendants in combination, to-wit, one bank and one shoe company which would not ordinarily have been possessed by any bank and shoe company. In other words, the withdrawal of each individually from doing business with plaintiff was lawful and such action by both or either of them could give plaintiff no cause of action, regardless of damage to plaintiff, because there would be no invasion of plaintiff's rights. No "exceptional circumstances" are attempted to be stated in the petition to furnish the basis for an independent action of tort for common law conspiracy, or to show an invasion of plaintiff's rights arising from mere force of numbers and concerted action, or to show a tort different in kind from a mere joint action of two wrongdoers. Unless the petition states facts to show that joint action or combination of the bank and the shoe company was such as to make unlawful a course of conduct that clearly would not give rise to liability, if carried on by single individuals, no cause of action was stated. The wrong or invasion of plaintiff's rights and the damage arising therefrom in case of a common law conspiracy must arise from the combination. In this case the damage alleged resulted from the independent lawful acts of the bank and independent act of the shoe company and not from coercion or pressure different in kind from that which either could have accomplished as separate individual banks and shoe companies.

We think that Fleming v. Dane (Mass.), 22 N. E. (2d) 609, 611 (1-3); DesLauries v. Shea (Mass.), 13 N. E. (2d) 932, 935, (3-9); and Neustadt v. Employers' Liability Assur. Corp. (Mass.), 21 N. E. (2d) 538, 540 (3-8), correctly state the common law rule and are in line with the few Missouri authorities available. The trial court correctly ruled the demurrers, and the judgment should be affirmed. It is so ordered. All concur.