**Timothy J. BUKOVAC, Respondent,**

v.

**LLOYD KETCHAM OLDSMOBILE, INC. and Safeco Insurance Company, Appellants.**

**Nos. 29206, 29209.**

Missouri Court of Appeals, Western District.

April 2, 1979.

Don B. Roberson, Stephen B. Millin, Jr., William L. Yocum, Kansas City, for Safeco.

Fred A. Lambert, Edwards, Markey, Ely & Lambert, Kansas City, for Ketcham.

Robert L. Shirkey, Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, and PRITCHARD, J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Action for $2,100 actual and $200,000 punitive damages for conversion by conspiracy of plaintiff's automobile worth $2,100. Counterclaim by defendant Ketcham for value of repairs to plaintiff's automobile made prior to alleged conversion and for rental value of automobile furnished plaintiff during repair of plaintiff's automobile. Verdict for plaintiff against defendant Ketcham for $2,100 actual damages and for defendant Safeco against plaintiff on the petition and for defendant Ketcham against plaintiff for $1,132.28 on the counterclaim. Appeal (29206) by defendant Ketcham combined with appeal (29209) by defendant Safeco from order of new trial on all issues on ground the verdict was against the weight of the evidence. The questions are whether there was evidence to show conspiracy between defendants Ketcham and Safeco, and whether there is any distinction between award of a new trial for inadequacy of punitive damages as opposed to one for inadequacy of compensatory damages. Affirmed.

On July 15, 1974, plaintiff, with his wife as a passenger, was driving his 1972 Ford Maverick, valued at $2,100, west on Truman Road in Kansas City. While temporarily stopped in traffic, the automobile was struck in the rear by an automobile owned by James D. Foster and forced into the rear of an automobile in front of it. Although the Ford sustained damage to both its rear and front ends, it remained operable to the extent it could be driven to a repair place. Plaintiff and his wife sustained personal injuries, those of Mrs. Bukovac being severe enough to require her removal by ambulance to a hospital.

James D. Foster had liability insurance with defendant Safeco and plaintiff was so informed at the scene. Plaintiff's own liability and collision insurance was with Aetna Insurance Company. The following day plaintiff called Safeco and talked with Henrietta Darnell, a claims adjuster. He told her how the collision occurred and of the injuries he and his wife received, and explained the condition of his automobile. He asked if she knew any good repair companies. She recommended defendant Ketcham, and told plaintiff he should take his car there and that Safeco would pay for its repair and rental charges on a car to be furnished him while his car was being repaired. It was disputed whether this agreement was effective only so long as Safeco had opportunity to deal directly with plaintiff. That afternoon plaintiff took his car to Ketcham where he talked with Bill Grubb, the body shop manager. A repair order was prepared by Mr. Grubb and it contained the following printed language:

"I hereby authorize the repair work to be done along with necessary materials. * * * An express mechanic's lien is acknowledged on vehicle to secure the amount of repairs thereto. * * *

"Signed /s/ Tim Bukovac

"TERMS CASH Unless Arrangements Made."

The repair order also carried handwriting of Mr. Grubb as follows:

"Repair Front and Rear Damage.

"Safeco Claiment. Draft to sign in office $916.28.

"Car Rental."

Contemporaneous with execution of the repair order, plaintiff also signed a form car rental agreement to pay Ketcham $9 per day rental for the car furnished him.

A draft for the $916.28 was delivered to Ketcham by defendant Safeco through its employee, Mack Carmean. Mr. Carmean had inspected the damage to plaintiff's automobile with Mr. Grubb July 17, 1974, and they had agreed that the damage amounted to $916.28. The draft was payable to "Timothy Bukovac and Ketcham Oldsmobile," cashable by Ketcham upon completion of plaintiff's repair work and his endorsement and release of Safeco's liability for property damage.

As repair of plaintiff's automobile proceeded, Mr. Grubb discovered previously

hidden damage requiring additional work worth $142.68. Unknown to plaintiff, Mr. Grubb so notified Mr. Carmean and Safeco sent Ketcham a draft dated August 5, 1974, for $142.68, payable to "Lloyd Ketcham Oldsmobile." Ketcham cashed this draft and credited $142.68 to plaintiff's account.

During the course of repairs to his automobile, plaintiff employed attorney Dean Arnold and so advised Ms. Darnell at Safeco. On July 25, 1974, Mr. Arnold wrote Safeco as follows:

"Gentlemen, kindly be advised that this firm represents Linda and Timothy Bukovac, who were injured July 15, 1974, on Truman Road near Chestnut Avenue in Kansas City, Missouri. Your insured, presumably, was James D. Foster, 3834 Windsor, Kansas City, Missouri. Your insured's automobile was being operated by Timothy J. Foster, age 16. Kindly acknowledge receipt."

Defendant Safeco interpreted Mr. Arnold's letter as an attorney's lien letter and acknowledged it as such July 30, 1974.

Subsequently, Mr. Arnold and John Dattilo, Safeco's claims manager, had a telephone conversation relative to plaintiff's claims. An argument developed over whether it was necessary for Mr. Arnold's name to appear on the car repair payment drafts. Mr. Arnold took the position it was not necessary for him to participate in the drafts or the incident release; he was interested only in plaintiff's personal injury claim. Mr. Dattilo took the position that Safeco would be exposed to possible double payment because of the attorney's lien unless Mr. Arnold released his lien or permitted his name on the repair drafts.

Regardless of the merits of the controversy between Mr. Arnold and Mr. Dattilo, the latter subsequently withdrew the $916.28 draft from possession of Ketcham, and advised Ketcham that Safeco was not going to pay plaintiff's repair and rental bills at that time. Mr. Arnold secured a draft from Aetna payable to Timothy J. Bukovac and Ketcham for $1,058.96, the total of the original repair bill, $916.28, and the supplemental bill, $142.68. Plaintiff had no rental

coverage with Aetna. Mr. Dattilo did not recover the supplemental draft for $142.68 because he was unaware of its issuance. At trial the $142.68 was still carried on Ketcham's books as a credit to plaintiff's account.

When plaintiff's car was ready for delivery, Mr. Grubb called plaintiff and so advised him. He also advised that Ketcham had no draft on hand to cover repairs and rental because Safeco was not going to pay and had withdrawn its draft. On August 9, 1974, plaintiff went to Ketcham to return the rental car and get his own car. He took the draft for the total repair bill which Mr. Arnold had secured from Aetna. Mr. Grubb told plaintiff that due to company policy he would have to pay both the repair and rental charges of $216 before his car could be released. Plaintiff had no funds for the rental charges and left without his car. He was never told of the $142.68 credit to his account by way of the supplemental draft paid Ketcham by Safeco, in which case he would have had at most a balance of $73.32 due for rental.

Thomas Stilwell corroborated Mr. Grubb's position on Ketcham's policy and stated he was not advised prior to these proceedings that rental charges were not covered by the mechanic's lien law. Ketcham had not been advised by Safeco to refuse delivery of plaintiff's automobile. The automobile remains in Ketcham's possession.

The submission against both defendants was by Instruction 3 which predicated liability on a finding that Safeco and Ketcham conspired to cause Ketcham to refuse delivery of plaintiff's automobile unless he paid the repair and rental charges. A submission against Safeco alone was by Instruction 7 which predicated liability on a finding that Ketcham undertook the repair and withheld possession of plaintiff's automobile within its agency for Safeco. The submission against Ketcham alone was by Instruction 10 which predicated liability on a finding that Ketcham refused delivery of plaintiff's automobile upon tender of payment of the repair bill.

Instruction 13 authorized punitive damages if the conduct of either or both defendants was willful, wanton or malicious.

The verdict for plaintiff against Ketcham for $2,100 actual damages was consistent with the undisputed value placed on the plaintiff's automobile by plaintiff. The verdict for Ketcham on its counterclaim for $1,132.28 was consistent with the repair bill, $1,058.96, plus the rental bill, $216, a total of $1,274.96, less the $142.68 credit from Safeco. Punitive damages were denied.

Appellants do not question the jurisdiction of the court to award one new trial on the ground the verdict was against the weight of the evidence, Rule 78.01, subject only to presence of a submissible case, *Friedman v. Brandes*, 439 S.W.2d 490, 492 (Mo.1969).

Appellant Ketcham would accept the verdict against it for the actual damages awarded plaintiff because of the verdict of no punitive damages against either defendant and the favorable verdict on its counterclaim. In support of its position, it charges the court abused its discretion in setting aside the verdict for purpose of a new trial to plaintiff because: The actual damages awarded plaintiff is the exact amount prayed and proved by plaintiff; the damages awarded Ketcham on its counterclaim were proved with concurrence of and without contradiction by plaintiff; plaintiff failed to prove a case for punitive damages; and whether to award punitive damages rests peculiarly in the discretion of the jury.

Appellant Safeco charges the court's order was in error and an abuse of discretion because plaintiff failed to make a submissible case against defendant Safeco in that there was no evidence that defendants Safeco and Ketcham conspired to cause Ketcham to refuse plaintiff delivery of his automobile, and no evidence that Ketcham's refusal to deliver plaintiff's automobile was within the course and scope of any agency relationship with Safeco.

Respondent's position is that there was evidence to show that Ketcham wrongfully and illegally refused to deliver plaintiff's automobile to him, and that Safeco brought about and joined in such conversion by which both defendants were guilty of conspiracy; and that there is no distinction between the grant of a new trial for inadequacy of punitive damages and the grant of a new trial for inadequacy of actual damages.

■ The parties concede the definition of "conspiracy" given the jury in Instruction 4:

"[a] combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage."

See also *Royster v. Baker*, 365 S.W.2d 496, 499–500 (Mo.1963); *Rosen v. Alside, Inc.*, 248 S.W.2d 638, 643 (Mo.App.1952); *Mills v. Murray*, 472 S.W.2d 6, 12 (Mo.App.1971); *Shaltupsky v. Brown Shoe Co.*, 350 Mo. 831, 168 S.W.2d 1083 (1943); *Rotermund v. U. S. Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973). Note also that a conspiracy cannot be the subject of a civil action unless something is done which, without the conspiracy, would give rise to a cause of action. To maintain an action for damages something in pursuance of the conspiracy must have been done, occasioning injury from which the damages have proximately resulted. *Dano v. Sharpe*, 236 Mo.App. 113, 152 S.W.2d 693, 695[5] (1941).

■ Ketcham's failure to surrender plaintiff's automobile to him upon tender of payment of repairs to it gives rise to a cause of action for conversion. Joinder in that act by Safeco, if so, would give rise to a claim based on conspiracy.

■ Ketcham concedes that Safeco and Ketchum "breached an oral contract which they had in unison for the benefit of a third person," plaintiff Bukovac. Ketcham also admits that it "made a serious mistake. It converted plaintiff's car by insisting on payment of the car rental charges before releasing plaintiff's car to him even though he was ready, willing and able to pay the

car repair bill" in satisfaction of the mechanic's lien against it. Plaintiff, in response to Safeco's directions, took his automobile to Ketcham to be repaired and secured an automobile from them with the cost of both to be paid by Safeco. The agreement was acceded to and joined by Ketcham. Safeco, with Ketcham's cooperation, withdrew its payment pursuant to such agreement and left plaintiff to shift for himself in payment of repairs to his car with the end result that he was wrongfully deprived of his car for inability to pay rental charges. Defendants' bad faith is further shown by their failure to disclose the credit of $142.60 standing to plaintiff's account at the time $216 in rental was demanded of him.

In these circumstances it was for the jury to say whether these defendants were to be relieved from punitive damages through exercise of sound business judgment with room for honest mistakes, as they contend, or whether the acts of both defendants which arose from breach of an agreement made for the benefit of plaintiff constituted a conspiracy as defined by the court to subject them to punitive damages. *Byers Bros. Real Estate & Ins. Agency, Inc. v. Campbell*, 353 S.W.2d 102, 105–106 (Mo. App.1961).

Punitive damages are awarded for purposes of punishing a wrongdoer and deterring him and others from similar acts in the future. Whether to award punitive damages and, if so, in what amount, rests peculiarly in the discretion of the jury. *Wisner v. S. S. Kresge Co.*, 465 S.W.2d 666, 669–670 (Mo.App.1971). It is the province of the trial court, however, to say whether the facts warrant as a matter of law an award of punitive damages. "The determination of this matter has been always one of law for the court. * * * courts have the same power of supervision over the one sort of damages as they have over the other * * *." *State ex rel. Atchison, T. & S. F. Ry. Co. v. Ellison*, 268 Mo. 225, 186 S.W. 1075, 1076–1077 (1916).

Consistent with this discretion, the trial court awarded a new trial to plaintiff on

ground the verdict was against the weight of the evidence, which ground encompasses inadequacy of the verdict. *Foster v. Rosetta*, 443 S.W.2d 183, 185 (Mo.1969); *State ex rel. State Highway Commission v. Klipsch*, 414 S.W.2d 783 (Mo.1967).

Judgment affirmed.

All concur.