## W. P. EPPS, Appellant, v. CHARLES H. DUCKETT et al.

Division Two, July 16, 1920.

1. **CONSPIRACY: Applicant for Postoffice: Written Protests.** Letters from patrons of a postoffice concerning the applications for appointment of two candidates, condemnatory of one and commendatory of the other, in which the writers express their individual opinions and their preferences, must be considered as a whole in order to reach the composite opinion, which requires the mental act of another than the writers, and therefore do not indicate such a concert of action as constitutes a conspiracy, but are to be considered protests and individual acts.

2. ———: ———: **Lack of Moral Character: Admitted.** An applicant for a postoffice cannot recover damages on account of a charge of lack of moral character contained in a protesting petition signed by numerous patrons, which he unhesitatingly admits was true.

3. ———: **Necessary Showing.** To establish a conspiracy for which an action for civil liability will lie it is necessary to prove a combination of two or more persons to accomplish an unlawful object by unlawful means or a lawful object by unlawful means.

4. ———: ———: **Lawful Act of One.** What one may do the many may do, if the combined act works no invasion of the complainant's rights; if one of the defendants, charged with a conspiracy to prevent complainant from being appointed postmaster at a

certain town, may have done all that is shown by the testimony without subjecting himself to damages, then none of them are liable unless their combined act worked an invasion of the complainant's rights. [Distinguishing State ex rel. v. Assur. Co., 251 Mo. 1. c. 291, which overlooked the exception that the combined act must work no invasion of the complainant's rights.]

5. ———: Gist of Action. The gist of a civil action for damages for conspiracy consists not in the conspiracy, but in the damage inflicted in pursuance thereof.

6. ———: Applicant for Post Office: Protests Admitted. The personal character and official fitness of an applicant for appointment as postmaster are legitimate subjects of truthful comment, and even if the charges against him were construed as jointly made by several defendants and have a reasonable resemblance to concert of action, if admitted by him to be true, or shown by the testimony to be true and known to his neighbors, although they may have been effective in preventing his appointment, the injury was negligible, and defendants are immune from an action for damages based thereon.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*J. C. Dyott* for appellant.

(1) There was a conspiracy among the defendants to secure the appointment of Duckett as postmaster at Pomona, regardless of the rules and regulations of the civil service laws and regulations. 5 R. C. L. 1061. While the civil law does not recognize the act of the conspiracy within itself as actionable, but rather the damages flowing therefrom, when the parties to such an agreement to do an overt act in furtherance of an illegal combination, resulting in an injury to the third party, the conspiracy becomes actionable and the conspirators liable to the injured party for damages flowing from thier illegal conduct. 5 R. C. L. 1091; 12 C J. 581. The act becomes actionable when done in pursuance of a combination of persons, actuated by mali-

cious motives, and not having the same justification as an individual. An act lawful in an individual can be subject to a civil conspiracy when done in concert, only where there is direct intention that injury shall result from it, or where the object is to benefit the conspirators to the prejudice of the public or the oppression of individuals and when such prejudice or oppression is the natural and necessary consequence. 5 R. C. L. sec. 42, p. 1092; 12 C. J. sec. 102, p. 583; sec. 103, p. 584, and note 82. (2) The connection between the parties once having been established then whatever was done in pursuance of the conspiracy, by one of the conspirators is to be considered as the act of all, and all are liable therefor, irrespective of the fact that they did not actively participate therein, or of the extent which they benefited thereby. 5 R. C. L. sec. 43, pp. 1093, 1094; 12 C. J. sec. 106, p. 586; Hunt v. Simonds, 19 Mo. 583; State v. Assurance Co., 251 Mo. 291. The defendants were guilty of unlawful acts and conduct in an effort to avoid the civil service for the benefit of the defendant Duckett. (3) There was a confederation or conspiracy or a combination between more than two persons to accomplish the appointment or selection of Duckett. The combination having been made then all persons connected with the matter were parties to the conspiracy and all equally liable for the acts of each other as well as their own acts. 3 Greenleaf on Evidence, sec. 93; State v. Walker, 98 Mo., 105; State ex rel. v. People's Ice Co., 246 Mo. 216. Everything said and done by conspirators with respect to the purpose of the conspiracy during its existence is admissible against all or either of the conspirators, whether in the presence of each other or not, and whether or not all the conspirators are included in the action. State v. Bobbitt, 228 Mo. 266. (4) The court erred in admitting specific evidence of specific offenses' over the objection of the plaintiff. Sotham v. Drovers, 239 Mo. 606; Yager v. Bruce, 116 Mo. App. 493.

*Green & Green* and *M. E. Morrow* for respondents.

(1) Defamatory words which are themselves actionable are privileged by reason of the social relations of those who uttered them, when uttered to one having a common interest in or duty toward the person speaking. Yager v. Bruce, 116 Mo. App. 473; Holmes v. Fraternal Union, 222 Mo. 556. (2) Plaintiff must allege and prove actual malice when the alleged utterance was made to one having a common social or moral interest or duty in the subject matter toward those uttering the alleged false and slanderous words. Findley v. Steele, 159 Mo. 299; Holmes v. Fraternal Union, 222 Mo. 556; Garey v. Jackson, 193 S. W. 920; Sullivan v. Com. Co., 152 Mo. 268; Kersting v. White, 107 Mo. App. 265; 25 Cyc. 385. (3) When a man becomes a candidate for a public office his character for honesty and integrity and his qualification and fitness for the position are put before the public and are thereby made proper subjects for comment. Smith v. Burris, 106 Mo. 94; Eikchoff v. Gilbert, 124 Mich. 353; Coffin v. Brown, 94 Md. 190; Mattice v. Wilcox, 147 N. Y. 624; Putnam v. Browne, 155 N. W. 910. (4) A charge made in reference to an applicant for a postoffice employment is privileged, when made to a, Government official, or one having appointing power, when made in good faith. Posnett v. Marble, 62 Vt. 480, 22 Am. St. 126; Coogler v. Rhodes, 38 Fla. 240. (5) None of the acts, words or utterances of respondents in this case constitute a conspiracy, either under the statute or at common law. Secs. 4705, 4706, R. S. 1909; Darrow v. Briggs, 261 Mo. 244; Com. Co. v. Hunt, 4 Metc. (Mass.) 123, 38 Am. Dec. 346. (6) The truth of the alleged false statement is always a good defense to an action for damages for libel or slander. Sec. 14, Art. 2, Mo. Constitution; McAtee v. Vanlandingham, 75 Mo. App. 45; McCloskey v. Pulitzer, 152 Mo. 339; Ukman v. Daily Record Co., 189 Mo. 378; Wil-

son v. Sun Pub. Co., 148 Pac. 774. (7) Bad character once shown in a person, the presumption is that it continues to be bad, until the contrary state is proved. Greenleaf on Evidence (13 Ed.), sec. 41; 2 Chamberlyne on Evidence, sec. 1045; Nelson v. Jones, 245 Mo. 579; People v. Squires, 49 Mich. 487, 13 N. W. 828. (8) Character of a party in civil action may be inquired into if put in issue by nature of the proceeding. Gourley v. Callahan, 176 S. W. 239. (9) It is not reversible error to admit in evidence testimony of specific acts of immorality of a party to the action in a civil case; and especially is this true when his character is a matter of investigation in the case. Sotham v. Tel. Co.. 239 Mo. 621. (10) Where mitigation and justification are pleaded, the evidence may take a much wider range than where a general denial alone is made. Sec. 1838, R. S. 1909; Ogle v. Sidwell, 167 Mo. App. 292; Baldwin v. Fries, 46 Mo. App. 288.

WALKER, J.—This is an action for damages brought in the Circuit Court of Howell County by appellant Epps against respondents, in which it is charged that they conspired to prevent and did prevent him from obtaining the appointment as postmaster at Pomona, a small village in that county, and thereby secured the appointment of the respondent Duckett. · The total amount estimated by Epps as his actual hurt by reason of this alleged conspiracy *dire* is the modest sum of five thousand dollars, to which he avers should be added a penalty in twice that sum. Moved perhaps by that Persian proverb preserved from oblivión by the poet Saadi, that "one is oftenest best served where least known," Epps removed his cause by change of venue from his home circuit court to that of Texas County, where it was tried in November, 1916, resulting in a verdict and judgment for respondents, from which this appeal is perfected.

A statement of the facts clothed in phraseology befitting the importance of the theme, as Balzac said in one of his Contes, runs thus:

In 1914 appellant Epps and respondent Duckett were applicants, among others, for appointment to the position of postmaster at Pomona. The Postoffice Department subjected the applicants to a civil service examination, the pertinence of which in the determination of their fitness for the duties of a fourth-class postmaster, measured by the inquiries made, may well be the subject of intelligent difference of opinion, but not here. The result of the inquiry showed that the appellant and respondent were among the eligibles according to the arbitrary standard fixed by the Department, the former ranking higher in figures than the latter. In addition other tests were applied, deemed essential to test the fitness of one charged with the sale of stamps and the receipt and distribution of such mail as is wont to find its way to a fourth-class office.

We are not lacking in information on this subject emanating immediately from the then superintendent of the division of post-masters' appointments, who testified at the trial. After volubly descanting generally upon the qualifications necessary to an efficient discharge of the duties of a postmaster in an office of this class, the witness, as definitive of the manner in which the wheat is winnowed from the chaff, or, to mix the figure, how the true prince of efficiency may be separated from the other applicants, said:

"Our first consideration was the service and serving of patrons. We first considered Number One and all things being equal, if there was nothing to create suspicion that he would not render as satisfactory and faithful service as the others, he was selected; but if there was, we sought light from any source, it made no difference from whence it came. It frequently happened that the Congressman in the district gave us a great deal of advice. We took that for what it was worth only.

When an old postmaster was an applicant we frequently went into the character of his service. We even went to the auditor to ascertain whether his services had been satisfactory. If it was a case of an old postmaster and other applicants, the record of the former would have a considerable bearing as to whether or not he would be considered as against the other eligibles on the list.

"If the Congressman preferred a particular individual, we would look over the whole case and take No. One on the list; and if the character of the town and the business indicated that a man would be better suited than a woman we would take No. One on the male list. If we preferred a man as postmaster we usually asked for male lists. We considered that out right under the civil service rules. Where there was no business of any considerable size, we preferred a man. We sought light from any source whatever, the candidate's knowledge of business, his age and general fitness, mental and otherwise; we chose the first name on the list. That man proving not as acceptable as No. Two, we took No. Two. Number Two failing, we took No. Three. The latter failing, we would ask for a new list. If No. Three should have charges submitted against him—reflections against his character, statements by letter—I could not say as to whether we would eliminate him and take No. Four. It would depend upon the character of the evidence. We would have to consider it as a whole; the age, experience and so forth of the various candidates, go over their papers and examinations, and the character of their answers, to judge of their business education and mental fitness. There are a good many things that enter into these matters. Sometimes you can see personal feeling cropping out with an evident desire to work down to someone else. And there would be charges, may be, against all three. Then, of course you would have to take the whole situation into consideration and judge it from an examination of all the papers as to which was best suited and all three might be a pretty bad proposi-

Epps v. Duckett.

tion. I have no doubt we have selected a good many not worth a tinker's—.

"In the absence of complaint against an individual we took them in the way they came. If an old postmaster was an applicant we invariably looked up his record. If one of the applicants stood ahead and it appeared he was not a suitable person according to the charges presented, we would pass him up and take the others on the list according to their qualifications."

Other facts adduced consist of, letters, petitions depositions and the oral testimony of witness at the trial. This mass of undigested testimony consists of more than 150 pages of matter, much of which is wholly irrelevant. Therefrom we are required to glean as best we may, for we have been furnished with no succinct statement of the facts, such relevant matter as may be found to sustain the issues made by the pleadings.

The letters are, in the main, from individuals who were patrons of the postoffice at Pomona; their tenor is commendatory of the respondent Duckett, and otherwise of the appellant. Interpreted according to their terms, they but express the individual opinions of the writers and declare their preference. That such preference is for the appointment of Duckett rather than Epps there can be no question. But to reach the composite opinion of the writers it is necessary to take their individual expressions and, so to speak, add them together. This process requires for its consummation the mental act of another than the writers and is therefore not indicative of such a concert of action as will constitute a conspiracy. The construction placed upon these letters by the Congressman of the district, who was a witness in the case and to whom they were addressed or who examined them on file in the department, is foreign to any conclusion indicating a combination on the part of the writers against Epps, such as is alleged in the petition. They constituted, as he definitely says, "protests" and are therefore to be construed as indi-

vidual acts rather than a combined effort. As to their effect he says: ''If there had been no protests against the appointment of Mr. Epps, he having a higher grade than Mr. Duckett, I believe he would have been appointed. But there were so many protests filed against him and none against Mr. Duckett, the appointing power felt Mr. Duckett should be appointed. If there had been no protests against Mr. Epps and I had believed his appointment would have been satisfactory to the pa-trons I should not have done anything to prevent his appointment. After receiving those protests I recommended Mr. Duckett, not by letter, but in conversation with the appointing power. I gave him my opinion that the appointment of Mr. Duckett would be more satisfactory to the people, but the appointing power acted, perhaps, more upon its own judgment than upon my recommendation, as he was familiar with the protests filed against Mr. Epps. I would not state that he read all of those letters, nor postively state that he had read any of them, but I carried them to him and he or I either read them and their substance was discussed. Perhaps to some considerable extent he relied upon my judgment as knowing the needs and desires of the people in that locality.''

One of the petitions, which was addressed to the Congressman and by him filed in the Postoffice Department, after recommending the appointment of Duckett on account of personal fitness and the convenience of his business house as most suitable for a postoffice, adds:

''We further understand that Mr. Duckett and Mr. W. P. Epps will be the only Democrats on the eligible list and we desire to impression upon you the importance from a point of party interest as well as of business and moral interest to this community that Mr. Duckett be placed in position to receive the appointment and we state as a matter of common knowledge that the people do not want Mr. Epps for postmaster under any condition, as his character has been publicly assailed and unsuccess-

fully refuted. We confidently believe that as between these two Democrats fully 95 per cent. of the patrons favor Mr. Duckett.

"As a matter of party interest and harmony and moral consideration to our community as well as a just recognition of Mr. Duckett's loyalty and service to his party and the interests of his town and community, we urgently request your prompt action in the matter indicated."

The other petition consists simply of a recommendation of Duckett for appointment and is signed by four county officials and the Representative and State Senator in the General Assembly.

The oral testimony consisted largely in a recounting by the witnesses, of which there were many, of their knowledge of the personal character of Epps and his reputation in the neighborhood. No attempt was made to prove these statements untrue, but it was sought to show that by the efflux of time they had lost their odor. Except to determine the issuable facts as to whether or not the appellant was injured by the acts of the respondents, it is not deemed necessary to state this testimony in detail or to indicate whether it was commendatory or otherwise, as it did not even remotely tend to prove an unlawful confederation to injure the appellant and hence it is immaterial. Nor do the depositions lend color to such a conclusion.

The charge in that portion of the petition to the Postoffice Department above quoted, and which was signed by certain of the respondents, as to the lack of moral character of the appellant, was sustained by his own testimony and that of a number of other witnesses. Waiving the question of qualified privilege in regard to a statement made in good faith to a Government official or one having appointing power concerning the character of appellant (Posnett v. Marble, 62 Vt. 480, 22 Am. St. 126; Coogler v. Rhodes, 38 Fla. 240), his claim for damages on this account may be dissipated by the in-

quiry as to how he could have been hurt by what he unhesitatingly admitted and all of the neighbors knew.

If it be true, as the texts and the adjudicated cases tell us, that to establish a conspiracy for which an action for civil liability will lie it is necessary to prove a combination of two or more persons to accomplish an unlawful object by unlawful means or a lawful object by unlawful means, the evidence adduced in this case is not sufficient to accomplish that end. [Clarkson v. Laiblan, 178 Mo. App. 708, 161 S. W. 660; Randall v. Lonstorf, 126 Wis. 147, 5 Ann. Cas. 371.]

Furthermore, one of these defendants may have done all that is shown by the testimony without subjecting himself to an action for damages. This being true, it follows that what one may do the many may do if the combined acts *works no invasion of the complainant's rights.* [Karges Furn. Co. v. Amalgamated Wood Workers, 165 Ind. 421, 6 Ann. Cas. 829.] This distinction noted in italics was overlooked in State ex rel. v. Assur. Cos., 251 Mo. l. c. 291, which by its terms overrules the early case of Hunt v. Simonds, 19 Mo. 583, and to that extent incorrectly states the law.

It must be borne in mind in weighing all of this testimony that the gist of the action consists not in the conspiracy, but in the damage inflicted in pursuance thereof. [Darrow v. Briggs, 261 Mo. l. c. 276; Carder v. Drainage Dist., 262 Mo. l. c. 558; Hunt v. Simonds, 19 Mo. l. c. 588; Hansen v. Nicoll, 40 App. Cas. (D. C.) 228, 33 Ann. Cas. 759 and notes; Martens v. Reilly, 109 Wis. 464; Young v. Aylesworth, 35 R. I. 259.]

In what manner and under what reasonable interpretation of the testimony can the appellant be said to have been damaged by anything shown to have been said or done by one or all of the respondents? He was an applicant for appointment to a public office. As such his personal character and official fitness were legitimate subjects of comment within the confines of truth.

The charges alleged to have been made by the respondents against him, if construed as joint or having any reasonable resemblance to a concert of action, furnish no basis for this suit. As stated, they were shown to be true, and their truth was not only testified to by a number of witnesses residing in the vicinity of the postoffice, but it was admitted by the appellant. Conceded to have been true by him and known to his neighbors, the local injury suffered by him on account of the publication of the charges, if such it can be called, by their being filed in the Postoffice Department, must be said to have been negligible. Although they may have been effective in preventing the appointment of the appellant, the respondents are immune from an action based thereon because of their truth. [Smith v. Burrus, 106 Mo. l. c. 103; Commonwealth v. Clap, 4 Mass. 163; Bronson v. Bruce, 59 Mich. 467; Hamilton v. Eno, 81 N. Y. 126; Rearick v. Wilcox, 81 Ill. 77; Sweeney v. Baker, 13 W. Va. 158.]

Referring to some matter of inconsiderable moment, a quaint old author characterized it as no more formidable than the storm created by a boiling saucepan. This we have modernized as a tempest in a teapot, by which sign this case may be fittingly designated. Finding no errors and the cause of action stated not having been sustained by the evidence, the judgment of the trial court is affirmed.

All concur.