ELIZABETH BECKER, Appellant, v. GEORGE T. THOMPSON, Defendant; WILLIAM BERBERICH, Respondent.—76 S. W. (2d) 357.

Court en Banc, November 20, 1934.

*Stout & Spencer* and *George F. Wise* for appellant.

*Grimm, Mueller & Roberts* for respondent.

30

WESTHUES, C.—Appellant in her petition charged that respondent and George T. Thompson and Claude C. Finley, on June 3, 1929, through fraud, secured from her certain real estate of the value of $16,500. The cause was tried before a jury and appellant was given a verdict and judgment of $14,500 and interest in the sum of $2,003.-

48. No service was obtained upon Thompson and the case as to him was dismissed.

The trial court sustained respondent's motion for a new trial and appellant appealed. The new trial was granted upon the fourth and eighth assignments of error in the motion, which read as follows:

"Fourth. The court erred in giving the instructions offered by the plaintiff. ·

"Eighth. The evidence offered by plaintiff failed to sustain the issues presented by the pleadings and failed to sustain the cause of action attempted to be pleaded in plaintiff's petition."

The eighth assignment presents two questions for our review. These, however, are somewhat commingled. They are: First, did appellant adduce sufficient evidence to sustain the issues presented, one of the issues being fraud; second, even though there was sufficient evidence of fraud did it sustain the cause of action as pleaded? Respondent contends that plaintiff wholly failed to prove any conspiracy as pleaded in the petition, therefore, plaintiff was not entitled to a verdict.

Respondent argues that the eighth assignment also covers the point that the verdict was against the weight of the evidence and, therefore, the action of the trial court in granting a. new trial should not be reviewed. This contention is untenable. There is nothing in the assignment, even if liberally construed, that presents that point. Furthermore, that question was specifically raised in the first assignment of the motion as follows:

"First. The verdict of the jury is against the evidence presented at the trial, and is against the weight of the evidence and is against the law and the evidence."

This latter assignment was not mentioned in the court's order granting a new trial. The point is, therefore, ruled against respondent.

The petition charged that the defendants in 1928, organized the George T. Thompson Hotel Corporation, which corporation acquired the Marquette Hotel in St. Louis, Missouri; that George T. Thompson was its president and treasurer; that in April, 1929, Berberich purchased $15,000 worth of capital stock of the corporation and in May, 1929, advanced money to it. The petition then alleged that the defendants conspired and planned whereby defendants might be reimbursed for the money advanced to and invested in the corporation; that in furtherance of this conspiracy they falsely and fraudulently misrepresented material facts to plaintiff to induce her to purchase capital stock in the corporation. The petition recited in detail the fraudulent representations made as to the financial condition of the corporation, and further the representation that this corporation owned all of the stock of the Interstate Hotel Company, which corporation owned leases on hotels at St. Charles and Cape Girardeau,

Missouri, and elsewhere. The petition then charged that the George T. Thompson Hotel Corporation was insolvent; that it did not own any of the stock of the Interstate Hotel Corporation, as had been represented, and did not have an interest in any hotel except the Marquette Hotel in St. Louis, Missouri; that the defendants owned a controlling interest in the Interstate Hotel Company. The petition then stated that appellant relied upon the representations so made and believing them to be true was induced to transfer title to her four-family flat, at 4044 Russell Boulevard, of the value of $16,500, to said corporation in exchange for forty shares of common and seventy-five shares of preferred stock of the Thompson corporation, $1,000 in cash and four $1,000 notes. The petition also charged that appellant was to receive treasury stock, but instead and unbeknown to her she received stock that was owned by defendant Berberich; that title to the property was not taken in the Thompson Hotel Corporation, but in the name of George T. Thompson and was later transferred to Berberich in exchange for stock of the corporation. The petition then charged that through various maneuvers and transactions respondent Berberich became practically the sole owner of the Marquette Hotel. More details of these transactions will be stated in the course of the opinion.

The evidence in the record discloses that many of the facts pleaded in the petition are not in dispute. We will state what we assume to be undisputed.

George T. Thompson Hotel Corporation owned the Marquette Hotel in St. Louis, Missouri, subject to a first mortgage and back taxes aggregating about $1,000,000. This corporation had no interest direct or indirect in any other hotel. It did not own any of the stock of the Interstate Hotel Corporation, which corporation owned the hotels at St. Charles and Cape Girardeau and had interests elsewhere. On the entrance door of the Marquette Hotel in St. Louis appeared the following: ''Interstate Hotels, George T. Thompson Hotel Corporation.'' The Thompson Hotel Company was insolvent in May, 1929. During this month respondent Berberich, because of financial difficulties of the hotel company, indorsed a note for the corporation in the sum of $8,000, about one-half of which he was later forced to pay. In April, 1929, Berberich bought $15,000 worth of stock in the corporation. This stock was purchased to help Thompson and Finley, who represented to Berberich that they needed money to operate the hotel. Berberich later in the year, during July or August, advanced $12,000 in cash to the corporation. In December, 1929, Berberich bought a note of $180,000, secured by a second deed of trust on the hotel property, executed by the Thompson Hotel Corporation, for which he paid $23,500. This deed of trust was subject to the prior deed of trust and taxes aggregating $1,000,000. The trustee, under the first deed of

trust, had at this time taken charge of the hotel and had commenced foreclosure proceedings.

Berberich in December, 1929, formed a corporation for the purpose of going into the hotel business. At the foreclosure sale in January, 1930, Eugene Cronk purchased the hotel and a few weeks later Cronk in turn sold the hotel to the corporation formed by Berberich, the consideration being that the Berberich Hotel Corporation assume the first mortgage and the taxes.

In September, 1929, Berberich became the owner of the property formerly owned by appellant. Respondent's testimony with reference to this transaction reads as follows: . .

"Q. When did you become the owner of that property? A. Some time in October, 1929.

"Q. And from whom did you acquire the property at 4042 and 4044 Russell? A. George T. Thompson and wife.

"Q. What was the nature of that deal whereby you acquired that property? A. I was after Mr. Thompson to take up some of these notes, to keep some of his promises of refunding me some of the money I had loaned him; he claimed to have had a flat out there he had some equity in; he said, 'It is mortgaged, but there is still some equity in it,' and he said, 'I will turn that over to you,' or give his stock, and I didn't think so much of the stock—I didn't think much of the stock—so I give him $6000 worth of stock back. The flat had a $6000 first mortgage and $2700, I think, second mortgage on it."

In September, 1929, appellant purchased $2700 worth of stock in the Thompson Hotel Corporation. Later in April and May a stock salesman frequently solicited appellant to purchase additional stock. These solicitations resulted in appellant transferring, on June 3, 1929, her property on Russell Boulevard for stock in the corporation. The value was placed at $16,500. The income from this property was about $1800 per year. Appellant received in return for her property preferred stock valued at $7,500, common stock valued at $4,000, $1,000 in cash and four notes of the Thompson Corporation of $1,000 each. Only one of these notes was paid.

Thompson and Berberich were jointly interested in the Interstate Hotel Corporation. In the spring and summer of 1929, they made trips together to St. Charles, Cape Girardeau, Jackson, West Virginia and other places.

Respondent Berberich was listed as being the vice president of the Thompson Corporation, by Dunn and Bradstreet and the Better Business Bureau of the City of St. Louis. The record does not disclose that he was ever elected or that he ever served in that capacity. Berberich testified that when he learned he had been so listed he immediately gave notice to the concerns that they were in error.

34

As to the main disputed facts the record discloses appellant testified that during the time the stock salesman was endeavoring to persuade her to purchase additional stock in the Thompson Corporation she sent her daughter to respondent Berberich for the purpose of ascertaining if he was the vice president of the corporation and to ascertain its financial standing. The daughter of appellant testified that pursuant to the instructions of her mother she went to respondent's office and made the inquiry. Her testimony reads in part as follows:

"Q. All right. Now, will you tell the jury, please, of your trip down to see Mr. Berberich, and what you said to him, and what he said to you? A. Well, I went in some time just around noon at his place of business at Thirteenth and Shenandoah and he happened to be in, and he said to me the company owned the Marquette Hotel down in Cape Girardeau, and the St. Charles Hotel out in St. Charles, and the Marquette in St. Louis; was in good financial standing; he had his own money in it, and he was an officer and director, and it was a good, safe investment for my mother to put her money in, and I was glad to hear it and I went and told my mother, and we went ahead with the deal. . . .

"The Witness: He said it owned the Marquette down in Cape Girardeau; the St. Charles out in St. Charles; and the Marquette in St. Louis, Missouri, and it had other leases, one in Springfield, Missouri; Hermann, Missouri; and Belleville, and one down in Jackson, West Virginia.

"Q. One in West Virginia? A. Yes.

"Q. Now, let's get this clear: He told you that the George T. Thompson Hotel Corporation owned these other things; is that correct? A. Yes, when you bought in the Marquette in St. Louis you bought into the Inter-State with the others. You couldn't buy Inter-State. It was Inter-State on the door, and George T. Thompson, president, on the door."

On cross-examination she testified as follows:

"Q. After Mr. Berberich told you that did you make any investigation to determine whether or not Mr. Berberich was telling you the truth? A. No, I took his word for it.

"Q. What was the purpose of you calling on Mr. Berberich? A. To find out what the salesman had told us, if that was true; and what Mr. Wolken had said, if that were true.

"Q. In other words, you didn't want to take the word of Mr. Wolken, and you didn't want to take the word of the salesman; is that correct? A. No, that is right.

"Q. But you say that after Mr. Berberich made these statements you believed them? A. Sure."

Respondent emphatically denied having made any representations to appellant or her daughter with reference to the Thompson Hotel

Corporation or any other company. He testified that he did not know appellant or her daughter and did not see them until long after appellant had bought the stock in the Thompson company; that he had no conversation whatever with either appellant or her daughter until after he became the owner of the property on Russell Boulevard; that he did not know of her purchasing the stock and that he, respondent, had no connection whatever with that transaction nor did he conspire with anyone to defraud appellant. A bookkeeper, employed by respondent at the Marquette Hotel, gave evidence tending to impeach the testimony of appellant and her daughter. This testimony was to the effect that appellant and her daughter did not know respondent until after he became the owner of the property on Russell Boulevard.

Viewing the evidence from the standpoint of respondent all of his transactions with the Thompson corporation are consistent with innocence. We may add that we are favorably impressed with his theory of the case. However, it is not our function to pass upon the weight of the evidence. That was the province of the jury that tried the case.

Many of the facts and circumstances also coincide with appellant's theory. Berberich was interested in the Thompson corporation. He was closely associated with Thompson. Berberich and Thompson controlled the Interstate Hotels. The name of Interstate Hotels appeared upon the door of the Marquette Hotel when in fact the Interstate Hotel Corporation had no interest whatever therein. The property obtained from appellant was valued at about $16,000. While the title was in Thompson's name he placed two deeds of trust on the property, through which he obtained about $8,000. The property was then transferred to Berberich, subject to the liens, in exchange for stock of the Thompson corporation, which stock was known to be worthless at the time. The stock appellant received was also known to be worthless. At the very time appellant was being solicited to purchase stock the corporation, through its officers, was appealing and receiving aid from Berberich. Berberich testified that Thompson transferred the Russell Boulevard property to him to repay part of the money advanced to the corporation. Berberich was interested in the Thompson corporation. He was benefited financially by the transaction with appellant. If the testimony of appellant and her daughter be taken as true then Berberich knowingly misrepresented the financial condition of the Thompson corporation and these representations were relied upon by appellant and induced her to transfer her Russell Boulevard property in exchange for the stock of the Thompson corporation. The evidence, therefore, justified a finding that Berberich was guilty of fraud. The instructions of the court submitted the case to the jury on the theory of a fraud perpetrated by Berberich.

The question of conspiracy was not submitted to the jury. We believe the evidence was ample to support the verdict of the jury on the hypothesis that respondent committed a fraud.

Respondent argues that appellant in her petition attempted to state a case of conspiracy and that conspiracy was the foundation of the cause of action; that having failed to prove the conspiracy appellant failed to make a case for the jury; that, therefore, the case was erroneously submitted on the question of fraud. There are cases to be found wherein it is essential, to prove a conspiracy in order to afford any remedy in the case. [Hughes v. Kansas City Motion Picture Mach. Operators, Local Number 170, 282 Mo. 304, 221 S. W. 95, l. c. 99 (1); State ex rel. v. Assurance Co. of America, 251 Mo. 278, 158 S. W. 640; Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997.]

However, the case before us is not such a case. Respondent contends that appellant wholly failed to prove the conspiracy as pleaded. The rulings on the admission of evidence and the instructions indicate that the trial court was of that opinion. We are writing this case on the theory that the evidence did not justify a finding of conspiracy. We are not saying, however, that as a matter of law a jury would not be authorized to so find. But assuming that a conspiracy was not proven, did the trial court err in submitting the case to the jury on the issue of fraud? We think not. The gist and essence of appellant's cause of action was fraud. A number of persons were charged with having perpetrated a fraud upon appellant and with having entered into a conspiracy to accomplish such fraud. If the evidence in such a case showed that any one or more of such persons were guilty of perpetrating the fraud, then such person or persons would be liable even though the conspiracy was not proven. The rule of decision is well stated in 12 Corpus Juris, 584, section 104.

"As a general rule averment and proof that the acts were done in pursuance of a conspiracy do not change the nature of the action or add anything to its legal force and effect. If a plaintiff fails in the proof of a conspiracy or concerted design, he may yet recover damages against one or more of defendants shown to be guilty of the tort without such agreement. The charge of conspiracy where unsupported by evidence will be considered mere surplusage not necessary to be proved to support the action."

See cases there cited and also Diver v. Miller (Del.), 148 Atl. 291; Franklin v. Erickson (Me.), 146 Atl. 437; Dickson v. Young (Iowa), 210 N. W. 452. This is the rule in Missouri. [See Hunt v. Simonds, 19 Mo. 583.] This Missouri case has been overruled on another point. [State ex rel. v. Assurance Co. of America, 251 Mo. 278, 158 S. W. 640, l. c. 645 (1).] The case, however, has been cited with approval on the question now under consideration. In the course of the opinion

the court said: " 'In an action on the case in the nature of a conspiracy, the gist of the action is not the conspiracy (as it is in an indictment, and was in the old writ of conspiracy), but the damage done to plaintiff.' The only use in charging the conspiracy is, to make the defendants responsible for the acts of each other, done in pursuance of the common design.'' This was approved in Darrow v. Briggs, 261 Mo. 244, 169 S. W. 118, 1. c. 125 (4); Epps v. Duckett, 284 Mo. 132, 223 S. W. 572, 1. c. 575 (4). The Hughes case, supra, 282 Mo. 304, 221 S. W. 95, 1. c. 103, makes reference to Hunt v. Simonds and Darrow v. Briggs, supra, and criticizes the holding of nonliability in those cases; this, upon a principle of law with which we are not now concerned.

In the case at bar appellant could have sued respondent alone for perpetrating a fraud and a verdict in her favor would have been sustained by the evidence as we find it in the record. We may treat the charge of conspiracy as surplusage. [27 C. J. 43, sec. 167 and cases there cited.] The trial court, therefore, did not err in submitting the case to a jury on the issue of fraud. There was ample evidence to support the verdict. It was error for the trial court to sustain the motion for a new trial on the eighth assignment in the motion.

█ This leaves the question of the correctness of the instructions. Respondent in his brief asserts that the principal instruction given for appellant failed to require the jury to find, first, that the representations of the defendant induced plaintiff to part with her property in exchange for the stock; second, that Berberich was actuated by a fraudulent intent; third, that the instruction submitted immaterial and nonfraudulent representations; fourth, that the instructions submitted issues not submitted by the pleadings; fifth, that the instructions submitted an erroneous measure of damages.

We do not find the instruction subject to the criticisms made. It required the jury to find, as a prerequisite to returning a verdict for appellant, that appellant's daughter informed respondent that her mother had sent her to respondent for the purpose of ascertaining the true facts with reference to the financial condition of the corporation for the reason that appellant was considering buying stock; that respondent made certain representations; that these representations were false and at the time known to be false by respondent, or that respondent represented that he knew such facts to be so when in fact they were not so; that appellant relied upon such representations not knowing them to be false; that appellant exchanged her property for stock of the corporation and that respondent profited by or intended to profit by the transaction. These requirements fully covered the questions of reliance upon the representations made and whether appellant parted with her property because of these

representations. While the instruction did not in so many words require the jury to find respondent was actuated by a fraudulent intent, it did require the jury to find facts which were equivalent to such a finding. [27 C. J. 79, 80, secs. 220 to 223, inclusive; Stufflebean v. Peaveler, 274 S. W. 926, l. c. 929 (2, 3); Dulaney v. Rogers, 64 Mo. 201.] In addition to this the trial court gave, at respondent's request, a number of instructions specifically covering these points.

The clause in the instruction "or that the defendant Berberich represented that he knew such facts to be so when, in fact, they were not so" may be justly criticized. The instruction should also have required a finding that respondent represented he knew such facts when in fact he had no knowledge thereof. A person may honestly make representations, not true, without any fraudulent intent. In the case before us, however, the respondent's contention was not that the representations if made were honestly made, but that no representations of any kind were made, by him, to appellant or her daughter. Under respondent's own evidence, if the representations were made at all they were known by respondent to have been false at the time. The defect in the instruction was, therefore, harmless error.

There is no merit in respondent's contention that the instruction submitted immaterial and nonfraudulent representations or that it submitted issues not presented by the pleadings. The instruction correctly enumerated the specific representations pleaded in the petition. This practice was approved in Osborne v. Simmons, 23 S. W. (2d) 1102, l. c. 1104 (3).

On the measure of damages the jury were instructed that if they found for plaintiff it should be in a sum equal to the value of plaintiff's property at the time of exchange, less the real value of the stock and notes of the George T. Thompson Hotel Corporation at the time of their purchase, less $2,000 actually paid. Respondent contends the true measure of damages to be the difference between the actual value of the stock and such value if it had been as represented. In Missouri this measure of damages, as contended for by respondent, has been held to be correct. [Busse v. White, 259 S. W. 458, 302 Mo. 672; Gash v. Mansfield, 28 S. W. (2d) 127, l. c. 132.]

This court, however, has said that while a plaintiff in a fraud case is entitled to damages as measured by the rule contended for by respondent, a defendant cannot complain if a plaintiff chooses to forego the benefit of his bargain and to collect only the difference between the price paid for the property and the value of the property received. We have so recently reviewed this question that we deem it unnecessary to reconsider it at length. In Finke v. Boyer, 331 Mo. 1242, 56 S. W. (2d) 372, l. c. 376, 377 (9, 10), the subject was given full consideration and in the course of the opinion we said:

"In the Kendrick case, the trial court gave an instruction on the measure of damages according to the 'benefits of the bargain' rule and the defendant complained, but this court held that plaintiffs were entitled to those benefits. In the instant case, the instruction seems to be more in accord with the Federal rule than with the Missouri rule. But if that be° error it is not prejudicial to appellant, because the Federal rule favors defendants while the Missouri rule tends to enhance the damages of plaintiffs." [See, also, Reynolds v. Davis, 303 Mo. 418, 260 S. W. 994, l. c. 997; Kendrick v. Ryus, 225 Mo. 150, 123 S. W. 937, l. c. 939, 135 Am. St. Rep. 585.]

Respondent also relies upon the Statute of Frauds. Section 2970, Revised Statutes 1929. This question was not presented to the trial court in any form. It was not pleaded. No objection was made to the admission of evidence and it was not mentioned in the instructions or the demurrer to the evidence. Respondent has, therefore, waived the statute if indeed it had any application to this case. In 27 Corpus Juris, page 368, section 446, we read: "It is well settled that the party seeking to avail himself of the benefits of the statute must distinctly call it to the attention of the court, in some manner, by his pleadings or otherwise, or it will be considered as waived." Many cases are cited in support of the text from various states, including Missouri. [See, also, McKee v. Rudd, 222 Mo. 344, 121 S. W. 312, l. c. 319, 320 (4); Smith v. Hainline (Mo.), 253 S. W. 1049, l. c. 1052 (3); Condit v. Maxwell, 142 Mo. 266, l. c. 275, 44 S. W. 467, l. c. 469 (1).] In Smith v. Hainline, supra, this court, after reviewing the question, concluded as follows:

"From all of which it follows that the defense of the statute being an affirmative one it is, under the circumstances at bar, waived unless distinctly asserted as stated, which was not done (Heath v. Beck (Mo. App.), 231 S. W. 657), *and that it is too late to raise it in the motion for a new trial* (Ewart v. Young, 119 Mo. App. 483, 96 S. W. 420; Young v. Ledford, 99 Mo. App. 565, 74 S. W. 443)." (Italics ours.)

The trial court gave a number of instructions, requested by respondent, which fully instructed the jury as to every defense presented by respondent and on respondent's theory of the case. The case was fairly tried and submitted to the jury by proper instructions. It follows that the order of the trial court, granting a new trial, must be set aside and the cause remanded with directions to reinstate the verdict of the jury and enter a judgment for appellant. It is so ordered.

PER CURIAM:—The foregoing opinion by WESTHUES, C., in Division Two, is adopted as the opinion of the Court en Banc. All concur.