243 S.W.2d 788 (1951)
TOLER
v.
MISSOURI INS. CO.
No. 28197.
St. Louis Court of Appeals, Missouri.
November 20, 1951.
Rehearing Denied December 21, 1951.
*789 Jones, Hocker, Gladney & Grand, James C. Jones III, St. Louis, for appellant.
Henry D. Espy, St. Louis, for respondent.
HOUSER, Commissioner.
This is an action on an insurance policy issued on the life of Chris Toler, brought by his widow Pinkie Toler, the named beneficiary. Originating in magistrate court where plaintiff recovered a judgment for $750, the case was appealed to the circuit court where a jury reversed the result, returning a verdict for defendant. This appeal is from the order of the trial judge sustaining plaintiff's motion for a new trial on the ground that error was committed by the giving of Instruction No. 9.
The petition is in conventional form. The answer, after admitting the issuance of the policy and the death of the insured, pleads that insured falsely and fraudulently represented in his application that he was in good health and had not been treated by a physician for five years prior to his application when in fact he was suffering from carcinoma of the stomach at the time he applied for insurance; that this condition, for which he had received medical treatment in the same year and prior to the date of his application, caused or contributed to his death.
The policy in suit did not contain a "sound health" provision. It did contain the following provision: "All statements made by the insured or in his behalf shall, in the absence of fraud, be deemed representations and not warrantees and no such statement shall void this policy unless it is in the application."
Appellant claims that its evidence established that the insured knowingly gave false answers to questions in the application and that Instruction No. 9 correctly states the law as to the proof required to establish wilful misrepresentation.
The two parts of the application for insurance were signed by Chris Toler on September 22 and October 21, 1948. The following questions were answered in the negative in the application: "Have you any ailments or diseases?" "Have you ever consulted or been attended by a physician or other practitioner during the past five years?" "Have you any disease or disorder?" In answer to the following question: "When did you last consult a physician and for what?" this answer appeared: "1943. Dr. Hegler (deceased). Illness: Indigestion. Duration: 2 days."
The policy is dated November 1, 1948. Chris Toler died August 17, 1949.
Plaintiff introduced the policy in evidence, showed demand and refusal to pay; that her husband was a taxicab operator; that he drove at times in 1948 and was seen at the cab stand practically every day before March, 1949 (when he went to the hospital for an operation); that in 1948 he did not appear to be losing any weight, but appeared to be in good health; that he had been treated by a Dr. Gueno in East St. Louis for colds and headaches; that he used "quite a few" aspirins; that Dr. Gueno had treated the insured two or three times at the house; that he was confined to his bed for two or three days in June, 1948 but that she never knew of his being in bed for more than a week at a time. Plaintiff was present at the time Part I of the application was signed by her husband. Her version of what occurred at that time will be stated later in this opinion. She testified that at the time of the application her husband weighed 160 or 165 pounds; that after Part I of the application was signed a doctor came to the house, examined her husband, and asked him if he was in good health; that her husband answered that "as far as he knew he had indigestion; he had quite a few colds * * * indigestion off and on since 1943"; that in answer to his question whether he had been to a doctor her husband told him he had been going to Dr. Hegler and Dr. Gueno "when he gets attacks of indigestion from different things he would eat." She said her husband began to lose weight about January or February, 1949; that he would have attacks of indigestion from "mostly anything he would eat"; that at that time Dr. Gueno advised a thorough check-up at Barnes Hospital.
*790 The doctor told plaintiff her husband "had a growth" and that an operation was necessary; that the first time she knew he "had a growth" was in March, 1949 and that her husband did not know about it until he went to Barnes Hospital in March, 1949; that neither she nor her husband knew in September, 1948 that he had a cancer. On cross-examination plaintiff conceded that in September, 1948 her husband was drawing benefits on two different disability policies. She specifically denied that Dr. Gueno told her in July, 1948 that her husband had cancer.
For the defendant Dr. W. T. Gueno testified that he first saw insured at his home on July 16, 1948 at which time he was suffering pain in the epigastrium; that the patient had been vomiting, and that he diagnosed the case as gastritis, peptic ulcer and possible malignancy. He sent the man for X rays which were taken the next day, July 17, 1948. After receiving the X ray report and in July, 1948 he diagnosed the case as carcinoma of the stomach and told the plaintiff of his diagnosis "right away" as soon as he received the X ray report. At a later date, which the doctor could not fix, he told insured what his condition was. Frequently thereafter he saw the insured, whose condition grew worse; he became weaker and lost weight. He was in bed or confined to the house most of the time after July, 1948. Dr. Gueno and the insured signed 19 weekly claims for the insured between July 16 and November 26, 1948 under a disability policy with United Insurance Companies, showing total disability and confinement to bed; and 27 claims between July 16, 1948 and July 26, 1949 under a disability policy with Washington National Insurance Company. Acute gastritis and possible gastric malignancy were reported by Dr. Gueno as the disease which was disabling the insured. During the same period other doctors helped the insured execute 17 claims against these two companies, certifying complete disability and confinement in bed. It was Dr. Gueno's opinion that insured died of intestinal obstruction with associated diseases of cancer of the stomach and metastasis. This he reported on the death certificate, which was admitted in evidence.
There was medical evidence that the X rays taken in July, 1948 showed a condition consistent with a diagnosis of cancer of the stomach. The hospital records showed that diagnosis on March 21, 1949. An operation was performed on the insured that day in which the total stomach and spleen were removed.
Dr. James G. Janney, Jr., testified in answer to hypothetical questions that in his opinion the insured was suffering from cancer of the stomach on July 16, 1948 and from that date until he went to the hospital in March, 1949, and that his death on August 17, 1949 was due to this condition.
Instruction No. 1 directed a verdict for plaintiff unless the jury should find that the insured "knowingly gave false answers" in the application. No. 2 withdrew from the consideration of the jury plaintiff's claim for a penalty for vexatious refusal to pay. Nos. 3 to 6, both inclusive, submitted the matters of misrepresentations with respect to previous consultations with physicians, and the existence of ailments, diseases or disorders, directing a verdict for defendant upon such findings. No. 7, placed upon defendant the burden of proving "that plaintiff obtained the policy mentioned in evidence by fraud; that fraud is never presumed and must be established by facts and circumstances." No. 8 told the jury that although they found that the insured was suffering from ailments or diseases of the stomach when he applied for the insurance, they could not find for defendant unless the insured "was aware of the fact that he was so afflicted and fraudulently stated (in his application) that he was not afflicted." (Parentheses our transposition).
By Instruction No. 9. which the trial court later considered erroneous, the jury was instructed that "* * * the terms `Fraud', `Fraudulent' and `Fraudulently', as that term is used in these instructions, does not require a finding that the insured, Chris Tolar, at the time he signed either part of the application for the policy in suit gave false answers to questions regarding his *791 health with the deliberate intent and purpose of deceiving the defendant or its agents, but it is sufficient for a finding of `fraud' that you find by a preponderance or greater weight of the evidence that the application contained a misstatement of fact or facts within the insured's personal knowledge at the time he signed either part of said application."
The first question brought here for review: was there evidence from which the jury could find that the insured knowingly gave false answers to the questions in the application? A cursory review of the evidence introduced on behalf of the defendant plainly shows that in at least four instances untruthful statements appear as answers to questions in the applicationsstatements of fact which in the very nature of things applicant certainly must have known were false. If insured gave defendant's agents the answers therein written and if he knew they were written into his applications when he signed them, a submissible case of fraud was made under the facts of this case. Although, as we shall point out, there is no evidence in the record that insured read either part of the application or knew the contents thereof at the time he signed, the sufficiency of the evidence in this regard is not of importance on this review for the reason that, in any event, there must be a new trial for error in Instruction No. 9.
The propriety of the first clause of Instruction No. 9, which instructs that the jury need not find deliberate intent and purpose to deceive the insured, is assailed by respondent on the ground that fraud is essential to the defense of misrepresentation; that intent to deceive is an essential element of fraud; and that deliberate intent to deceive must be pleaded, proved, instructed upon, and found by the jury.
Appellant contends that in establishing the defense of fraudulent misrepresentation the insurer is not required to prove "actual" fraud, i. e. that the answers were made by insured with the deliberate intention and purpose of deceiving and defrauding the insurer; that the insurer need only prove "legal" fraud, i. e. that the answers were "false to the insured's knowledge"; that when a representation is shown to have been knowingly untrue there is a conclusive presumption of law that it was made with the intention of deceiving the company; and that the jury is not required to find as a fact that which the law presumes from other proven facts.
In order to avoid liability on this type of policy on the ground of fraudulent misrepresentation the representations by the insured must not only be false and material to the risk, but also must be made with intent to deceive. Doran v. John Hancock Mut. Life Ins. Co., Mo.App., 116 S.W.2d 172; Clegg v. John Hancock Mut. Life Ins. Co., Mo.App., 141 S.W.2d 143; Schuetzel v. Grand Aerie Fraternal Order of Eagles, Mo.App., 164 S.W.2d 135; Dyer v. Kansas City Life Ins. Co., Mo.App., 188 S.W.2d 758. The pleading, State ex rel. Metropolitan Life Ins. Co. v. Allen, 310 Mo. 378, 276 S.W. 877, and the proof, Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202, Cole v. Cassidy, 138 Mass. 437, 52 Am.Rep. 284, 285, however, need go no further than the pleading and proof of facts from which the law implies the intent to deceive, and in instructing the jury it is not necessary to require the jury to find in so many words that the tort feasor was actuated by a fraudulent intent where the instruction requires the jury to find facts which are the equivalent to such a finding. Becker v. Thompson, 336 Mo. 27, 76 S.W.2d 357, loc. cit. 362.
In this case the facts to be found which constitute the legal equivalent to a finding of intent to deceive are these: that material representations were made; that they were false; that insured knew they were incorporated in the applications when he signed them; and that he knew they were false. Upon such finding the scienter as well as the falsehood is established. The law thereupon supplies the element of fraudulent intent as a conclusive presumption of law.
Since a new trial will be necessary for error in the latter part of Instruction No. 9 as we shall see infra, counsel in redrafting *792 the instruction out of an abundance of caution should so reform the first clause of Instruction No. 9 as to state the above principles clearly and in such manner as to eliminate any possibility of the interpretation that intent to deceive is no part of the defense of fraudulent misrepresentation.
Now let us consider the latter part of Instruction No. 9, which is as follows: "* * * it is sufficient for a finding of `fraud' that you find by a preponderance or greater weight of the evidence that the application contained a misstatement of fact or facts within the insured's personal knowledge at the time he signed either part of said application."
Respondent contends that this portion of Instruction No. 9 is erroneous because it does not require the jury to find that the insured knew that the statements contained in the application were false; that it permits the jury to find the existence of fraud if insured's name was signed to an application containing false statements even though insured may have not known the contents of the application; that the plaintiff's testimony shows that he made a full disclosure in good faith and that he did not read the application.
Plaintiff's evidence showed that insured signed the application without knowing the contents thereof. The application was in two parts. The insurance agent who sold the policy filled out Part I. Defendant's examining physician filled out Part II. Both the agent and the doctor questioned the insured, then wrote answers in the blank spaces on the forms, and the insured thereafter signed each part of the application. Insured's wife testified that the agent, in preparing Part I of the application, asked insured if he was in good healthif he then had any ailments or diseases; that insured told the agent that "he didn't have any he knew of; he had indigestion every now and then. He had indigestion since 1943"; that the agent did not ask insured whether he had been treated by a doctor within the past five years; that the agent asked insured whether he carried insurance with any other company, and that insured told him he carried insurance with the "United and Washington"; that the agent then told the insured that he would send a doctor to examine him at his home; that the doctor made a physical examination, and asked insured whether he was in good health; that insured answered that "as far as he knew he had indigestion; he had quite a few colds * * * (indigestion) off and on since 1943"; that the doctor asked insured if he had been under care of a doctor and insured told him "Yes * * * he told him he had been going to Dr. Hagler and Dr. Gueno for when he gets attacks of indigestion from different things he would eat"; that her husband signed the application but that he did not read it. She said "He never read it * * * he didn't read it." She further testified that the agent took the application with him, and did not give insured a copy thereof.
Instructions Nos. 3, 4, 5 and 6 direct verdicts for the defendant (a) if the insured in his application "stated" that he had not consulted physicians during the five years prior to the date of the application (No. 3), that he did not have any ailment or disease (No. 4), that he had not consulted a physician since 1943 (No. 5), and that he did not have any disease or disorder (No. 6) and (b) if the jury finds to the contrary. In all of these instructions it is assumed, and in its brief and oral argument appellant assumes, that insured knew the contents of Parts I and II of the application at the time he signed them. This assumption has no foundation in the evidence. The agent Tarbox testified that he asked insured the questions and that insured gave the answers written by the agent in Part I of the application, but there is no evidence in the record that insured read either part of the application or knew the contents thereof at the time he signed.
Where the insured at the time of applying for a policy of insurance truthfully states to the agent the facts pertaining to the risk and the agent inserts in the application mistaken or intentionally false statements the insurer cannot set up such misstatements in avoidance of the policy. State ex rel. Bull Dog Auto Ins. Ass'n of Chicago v. Bland, 316 Mo. 559, 291 S.W. *793 499; Longo v. John Hancock Mut. Life Ins. Co., Mo.App., 142 S.W.2d 871; Coleman v. Central Mut. Ins. Ass'n, Mo.App., 52 S.W.2d 22; Zeilman v. Central Mut. Ins. Ass'n, 224 Mo.App. 145, 22 S.W.2d 88; 45 C.J.S., Insurance, § 729, pp. 735, 736, and this rule applies to cases in which the insured signed the application without reading it, unless he is guilty of collusion with the agent. Coleman v. Central Mut. Ins. Ass'n, supra; Zeilman v. Central Mut. Ins. Ass'n, supra; 45 C.J.S., Insurance, § 733, p. 743. (There was no evidence or issue of collusion between the agent and insured.)
The last clause of Instruction No. 9 is an attempt to state the rule of law that it is sufficient for a finding of fraud that the jury find by a preponderance or the greater weight of the evidence that at the time he signed either part of the application the insured knew that the application contained misrepresentations of fact or facts and that the insured knew that said representations were false.
It is our opinion that the instruction fails to state this rule with clarity; that it is confusing; that the words "within the insured's personal knowledge" as used in the instruction might be understood to refer to the immediately preceding words "misstatement of fact or facts" and not to the words "application contained"; that the instruction does not definitely require the jury to find that the insured knew that the statements contained in the application were false; that it permits the jury to make a finding for the defendant on the ground of fraudulent misrepresentation without requiring the jury to find that the insured knew that the statements contained in the application were false. It would be possible under this instruction for the jury to convict the insured of fraud if the insured signed an application containing "a misstatement of fact or facts within the insured's personal knowledge at the time he signed" the application even though the insured may not have known the contents of the application. In thus ignoring the possibility that the insured made a full disclosure to the agents of the defendant in good faith and signed the application without having known the contents thereof, respondent's rights were prejudiced, and the action of the trial judge in granting a new trial was proper.
It is therefore the recommendation of the Commissioner that the order granting a new trial be affirmed.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The order of the trial court granting plaintiff a new trial is, accordingly, affirmed and the cause remanded for that purpose.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.